[No. 15586.   In Bank.—April 5, 1895.]

MARTIN  M.  MILLETT  ET  AL.,  RESPONDENTS,  *v.*
THOMAS  LAGOMARSINO  ET  AL.,  APPELLANTS.

ADVERSE POSSESSION—SURRENDER OF POSSESSION TO OWNER—LANDLORD
AND TENANT—LEASE FROM THIRD PARTIES—JOINT TRESPASS.—The rule
that it is necessary to surrender possession and again enter before the
possession can become adverse obtains only where the person claiming
to hold adversely was put into possession by the owner, or has, at least,
held possession under such owner; and, where no relation of landlord
and tenant exists between the owner and the person in possession, the
fact that such person has a lease from others to a tract including the lot
in dispute does not make his possession of that lot any less hostile to
the owner, but such lease would only have the effect to make the pur-
chasers joint trespassers with the lessee.

ID.—COLOR OF TITLE—POSSESSION UNDER TAX SALE—INVALID CONVEY-
ANCE.—Possession obtained under a conveyance from a purchaser at a
tax sale who has himself received no tax deed, although no title is ac-
quired through such conveyance, is sufficient to bring the grantee within
the provisions of section 323 of the Code of Civil Procedure for the pur-
pose of constituting an adverse possession by any person claiming a title
founded upon a written instrument.

APPEAL from a judgment of the Superior Court of San
Mateo County.

The facts are stated in the opinion of the court.

*Nowlin & Fassett*, and *Aylett R. Cotton*, for Appellants.

As Michael Millett obtained possession of the property
in controversy with the permission of those owning and
controlling it, and as Millett never surrendered the pos-
session thus obtained, he or his alleged grantees, the
plaintiffs, cannot dispute that Tenney had title to the
lot at the time Millett took possession, nor dispute the
title which the defendant Cronan has since acquired
from Tenney; and Michael Millett could not acquire
title to the lot by adverse possession.   (Code Civ. Proc.,
sec. 1962, subd. 4; *Hussman* v. *Wilke*, 50 Cal. 250; *Tewks-
bury* v. *Magraff*, 33 Cal. 244; Bigelow on Estoppel, 372;
Taylor's Landlord and Tenant, 5th ed., sec. 706; *Stand-
ley* v. *Stephens*, 66 Cal. 541.)   The possession of Michael
Millett having been amicable and by permission, the

use that he had of Tenney's lot during the time he
claims to have paid taxes thereon placed him under
obligation to pay those taxes. (*Barrett* v. *Amerein*, 36
Cal. 323.)   The burden of proving all the essential ele-
ments of an adverse possession, including its hostile
character, is upon the party relying upon it.   (*De Frieze*
v. *Quint*, 94 Cal. 653; 28 Am. St. Rep 151.)

*Nagle & Nagle*, for Respondents.

The lease under which Michael Millett occupied cer-
tain lands terminated before the expiration of the term
when he and McNear farmed it on shares.   McNear
thereupon took possession on behalf of himself and his
colessors under the lease.   (*Bernal* v. *Hovious*, 17 Cal.
541–45; 79 Am. Dec. 147; *Henderson* v. *Allen*, 23 Cal.
519; Taylor on Landlord and Tenant, sec. 24.)   Not
alone is the proof positive that the possession under the
lease was surrendered up, but the lease itself expired
November, 1876, and after that so long as Michael Mil-
lett continued in possession he was a trespasser.   (*Stop-
plekamp* v. *Mangeot*, 42 Cal. 322; *Canning* v. *Fibush*, 77
Cal. 197; *Hihn* v. *Mangenberg*, 89 Cal. 268; *Burnham* v.
*Stone*, 101 Cal. 164.)   The deed of Jason Wight to
Michael Millett made July 24, 1882, was sufficient
notice of the adverse holding of Michael Millett of the
premises in dispute. ˙ (*Hicks* v. *Coleman*, 25 Cal. 135;
85 Am. Dec. 103; *Walsh* v. *Hill*, 38 Cal. 481; *Thompson*
v. *Pioche*, 44 Cal. 517; *Winterburn* v. *Chambers*, 91 Cal.
170.)   The possession of Michael Millett was a hostile
possession, and his possession was sufficient to put any
person exercising ordinary prudence on his guard and
inquiry as to the existence of his claim of title.   It
is a well-settled rule of law that if a person fails to exer-
cise the care of an ordinary prudent person notice is
presumed.   (*Unger* v. *Mooney*, 63 Cal. 591; 49 Am. Rep.
100; *Thompson* v. *Pioche, supra.*)   The respondents being
the grantees of Michael Millett a continuity of title ex-
isted between them, and they have a right to any title
acquired by him.   (*Langford* v. *Poppe*, 56 Cal. 73; *Vance*

v. *Wo.d*, 22 Or. 77.) The judgment restoring the plaintiffs and respondents to possession of the property was correct. (Code Civ. Proc., sec. 380; *Polack* v. *Gurnee*, 66 Cal. 266; *Kitts* v. *Austin*, 83 Cal. 167–72.) This is an action to quiet title under section 738 of the Code of Civil Procedure, and plaintiffs, under the complaint, had a right to prove a title acquired by adverse possession. (*Arrington* v. *Liscom*, 34 Cal. 370, 371; 94 Am. Dec. 722; *Liebrand* v. *Otto*, 56 Cal. 242–47; *Tansman* v. *Faris*, 59 Cal. 663; *McCormack* v. *Silsby*, 82 Cal. 72.)

TEMPLE, J.—Action brought to quiet title.

The answer denies plaintiffs' ownership and avers title in one of the defendants, John B. Cronan, under whom the other defendant holds.

Plaintiff recovered judgment, the court finding the allegations of the complaint true, and all the allegations of the answer untrue.

Plaintiffs' sole claim of title is from adverse possession.

The lot in question is known as lot 2, and is one of many lots comprising about ten acres, which belonged at one time to the City Extension Homestead Association, and which, with other lands, were subdivided by the association prior to 1870.

Lot 2 was conveyed to John Tenney by the association prior to 1873, and the others to different owners. Lot 2 was one hundred feet square.

In November, 1873, Michael Millett entered into possession of the ten-acre tract and other lands under a lease for three years, executed by ten owners of lots in the tract, or in some portion of the lands formerly owned by the association, for the lease included other lands besides the ten-acre tract, which last-mentioned tract, however, was inclosed by itself.

The lessors did not claim undivided interests in the demised premises, but each owned the land which had been conveyed to him by the association. The lease was in writing, and purported to lease to Millett their

interest in the lands known as the City Extension Homestead Association. Millett remained in possession of the premises up to some time in 1891, when lot 2 was entered upon by defendant Lagomarsino, who claimed under defendant Cronan, who had obtained a deed for the lot from John Tenney.

For the first three years Millett paid rent as stipulated in his lease; after that he still retained possession, but paid no rent.

In July, 1882, Millett obtained a deed for the lot from one Jason Wight, who had purchased the property at a tax sale, although it does not appear that a tax deed was ever executed to him; Millett recorded this deed, and then—as plaintiff contends—commenced to assert title to the land and to hold the same adversely to all the world.

Appellants contend that as Millett entered into possession as a tenant, he cannot initiate an adverse possession without first surrendering possession to his landlord; and further, that, if he can do so, Tenney and his grantees should have some notice of the change in the manner in which Millett was holding before his possession could become adverse to Tenney, so as to set the statute of limitations in operation.

The rule that it is necessary to surrender possession and again enter, before the possession can become adverse, obtains only where the person claiming to hold adversely was put into possession by the owner, or has at least held possession under such owner. No such relation ever existed between Millett and Tenney.

The lease from McNear and others did not render Millett's possession of lot 2 less hostile to Tenney. Had Tenney sued Millett for trespass in entering upon it, the lease would have constituted no defense; on the contrary, if it is properly construed as including lot 2 and thereby authorizing Millett to enter into possession of it as tenant, it would have made the lessors joint trespassers with Millett. The only effect of the lease affecting this case was—conceding that it included lot 2—to

show that while Millett was occupying the premises under it he was not in possession, claiming to be the owner.

As the relation of landlord and tenant never existed between Tenney or his grantees and Millett, section 326 of the Code of Civil Procedure has no application to this case.

It was not contended that Millett acquired any title through the deed from Wight, but simply that it brought him within the provisions of section 323 of the Code of Civil Procedure. It seems sufficient for that purpose. (*Packard* v. *Moss*, 68 Cal. 123; *Wilson* v. *Atkinson*, 77 Cal. 485; 11 Am. St. Rep. 299.)

The possession of Millett was sufficient to establish an adverse holding under the statute, and there was no conflict in the evidence. As to Tenney, Millett had all the time been a trespasser, and his possession was sufficient notice of an adverse claim. There is some claim that McNear, when he made the lease as one of the lessors, was the agent for all who had owned lots in the homestead, and was acting for Tenney in making the lease. There is really no evidence which tends to show this, and the terms of the lease disprove the claim.

If the law be as announced in this opinion there is nothing whatever in the affidavits used on the hearing of the motion for a new trial. The evidence set out in them would not have tended to prove a defense.

The judgment and order are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J., BEATTY, C. J., and HENSHAW, J., concurred.