[Sac. No. 3024. In Bank.—November 17, 1921.]

SECRET VALLEY LAND COMPANY (a Corporation), Respondent, v. WILLIAM F. PERRY et al., Defendants; MARY J. THOMPSON, as Administratrix, etc., Appellant.

[1] PUBLIC LANDS—TITLE IN UNITED STATES—TAXATION BY STATE.—Land belonging to the United States is not subject to taxation by the state, and a sale of such land for taxes levied thereon before it is listed to the state and before the applicant to purchase the land from the state is in possession is void.

[2] ID.—CONFLICTING CLAIMANTS — HOLDER OF PRIOR CERTIFICATE — LACHES—STATUTE OF LIMITATIONS.—A claim of title to state land based upon a certificate of purchase issued prior to the listing of the land to the state by the United States is neither barred by laches nor by the provisions of section 343 of the Code of Civil Procedure, as against a claim under a subsequent certificate of purchase issued after the land had been sold to the state under a void tax sale, where the latter merely paid the taxes for several years and neither of the claimants had ever been in possession or made any claim or demand upon the other until the latter commenced an action to quiet title.

[3] QUIETING TITLE—ADVERSE CLAIM.—One holding the legal title or a paramount claim to the legal title is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title.

---

1. Liability to state taxation of United States property granted or sold by government, but to which government still holds title, note, 11 Ann. Cas. 391.

[4] Id.—Mere Cloud upon Title—Continuing Cause of Action.—
An outstanding adverse claim which amounts only to a cloud upon
the title is a continuing cause of action and is not barred by
lapse of time until the hostile claim is asserted in some manner
to jeopardize the superior title, and so long as the claim lies
dormant and inactive the owner of the superior title has the
privilege of allowing it to stand indefinitely, and each day's
assertion of the claim gives a renewed cause of action to quiet
title until such action is brought.

APPEAL from a judgment of the Superior Court of
Lassen County. H. D. Burroughs, Judge. Reversed.

The facts are stated in the opinion of the court.

Harrison S. Robinson, Harry L. Price, James S. Moore,
Jr., and R. W. Macdonald for Appellant.

R. M. Rankin for Respondent.

SLOANE, J.—This appeal involves the question of priority of right between the plaintiff and the defendant
Thompson, under conflicting certificates of purchase of land
from the state of California.

The appellant's certificate is prior in time and unless
avoided or forfeited, establishes an interest superior to that
claimed by respondent.

The action was brought to quiet title and the judgment
was for plaintiff.

The findings of the trial court upon which this judgment
rests are to the effect "that the right, title and interest of
said defendant and her predecessors in interest, is barred by
her laches and unreasonable delay in asserting their claim to
the property affected by this action"; and "that the claim
of this defendant is barred by section 343 of the Code of
Civil Procedure of the state of California."

If, as contended by appellant, these findings are unsupported by the evidence, judgment should have been for the
defendant.

The facts affecting the title to this land, accepting the
summarized statement in respondent's brief, are as follows:

"On September 18, 1895, said land was vacant Government land of the United States, and on said date Frank
Robert Thompson filed in the office of the Surveyor General

of the State of California an application to purchase said land from the State.

"March 17, 1896, the Surveyor General approved said application of Frank Robert Thompson to purchase the land.

"May 18, 1896, Certificate of purchase Number 13625 issued from the Register of the State Land Office to said applicant.

"February 21, 1898, the land in question was clear listed to the State of California by the United States Government, and included in clear list No. 8, Susanville Land District.

"For the fiscal year 1897, and for five years subsequent thereto, said land was assessed for taxation as the property of Frank Robert Thompson by the County of Lassen.

"On June 27, 1898, as provided by statute, the land was sold for non-payment of taxes levied in 1897 and a Certificate of Sale therefor issued to the State.

"On June 28, 1903, a Tax Deed was made by the Tax Collector of said County to the State as provided by law, and a certified copy thereof filed in the office of said Surveyor General of said State.

"On April 26, 1909, Jessie R. McKay, pursuant to the provisions of Section 3788 of the Political Code, redeemed said land from such Tax Sale and filed a Certificate of redemption thereof, together with her application to purchase the same, in the office of the Surveyor General on May 7, 1909. Her application was thereafter approved and on December 15, 1909, Certificate of purchase Number 17,076 issued to her.

"Prior to the commencement of this action all the principal due the State of California for the purchase of said land under said certificate had been paid, and all the interest thereon, except the sum of $30.88, which was paid on the 29th day of June, 1918, prior to the trial of this action.

"Each year after the date of said Certificate of Purchase, No. 17076, said lands were assessed to the owner and holder of said Certificate, and the taxes thereon paid as they fell due by said Jessie R. McKay or her grantees.

"This action was commenced July 12, 1917, by the Plaintiff who was then the owner of the said Certificate issued to Jessie R. McKay. Appellant's answer and cross-complaint was filed December 6th, 1918.

"Neither Frank Robert Thompson, nor his heirs or representatives, made any claim to said land or to said certificate of purchase issued to said Thompson prior to 1918, nor did they make any payment to the State of California on account of the principal or interest after the issuance of said certificate of purchase to said Thompson, prior to the 31st day of December, 1918.

"Frank Robert Thompson died March 12, 1913, and on January 11, 1918, Mary J. Thompson was appointed Administratrix of his estate.

"Prior to her appointment as such administratrix she gave notice to the Surveyor General required by Chapter 602 of the Statute of 1917, and on December 31, 1918, she paid the balance of the purchase money, interest and penalties accrued on the said Thompson certificate of purchase during the period of twenty-two years."

It is not seriously disputed that the clear listing of this property to the state of California as lieu land subsequent to Thompson's application to purchase and the issuance to him of a certificate of purchase May 18, 1896, by the register of the state land office validated and established a preferential right to this property, which entitled him to a patent from the state upon his meeting the subsequent payments according to law.

[1] The subsequent tax sale for taxes levied upon the land in 1897, while title was still in the government of the United States, was void, the land not being subject to taxation by the state. (*Slade* v. *County of Butte,* 14 Cal. App. 453, [112 Pac. 485]; *Roberts* v. *Gebhart,* 104 Cal. 67, [37 Pac. 782]; *Allen* v. *Pedro,* 136 Cal. 1, [68 Pac. 99].) The land had not at that time been listed to the state and Thompson was not even in possession.

The state in due time took a tax deed from the tax collector under this void sale, and thereafter in 1898 respondent's predecessor in interest redeeming the land under this sale, applied for and received a certificate of purchase from the state. If the tax sale had been effective in annulling Thompson's prior certificate of purchase, it may be conceded that respondent's claim of title would be established. But the proceedings under such tax sale were void and were entirely ineffectual to foreclose the rights of Thompson or

to reinvest the state with any power to further dispose of the land.

Neither Thompson nor his personal representative after his death took any further steps to complete title under his certificate of purchase until the year 1918. Neither was any action taken by the state to foreclose his rights for failure to make interest or other payments required by law. In December, 1918, however, in compliance with the requirements of chapter 602 of the Statutes of 1917, Mary J. Thompson, the appellant, as administratrix, paid the balance due on the purchase money, interest, and penalties accrued under such original certificate of purchase.

In the meantime the respondent and its predecessors in interest paid taxes on the property and made interest and installment payments under their certificate of purchase, and at the time this suit was commenced had paid all the purchase money, interest, etc., excepting the sum of $30.88 which was paid before the trial.

It is to be noted that neither of the claimants was at any time in possession of the land, and prior to the bringing of this suit to quiet title neither had made any claim or demand upon the other.

Under this state of the case it is the finding of the trial court and the contention of the respondent that the Thompson claim represented by appellant is barred by laches and under the provisions of section 343 of the Code of Civil Procedure.

It is not shown, and is not even claimed, that there has been any forfeiture of the Thompson rights as against the state of California by the delay in making payments of the interest, penalties, and balance of the purchase price under his certificate of purchase. Long as the period of delinquency was it worked no forfeiture under the law in the absence of a foreclosure until after the enactment of chapter 602 of the Statutes of 1917; and the final payments above referred to were made in compliance with that statute.

The laches and lapse of time complained of is in failing to protest or take action against the claim to the property evidenced under respondent's certificate of purchase, and in permitting the payment of taxes and other expenditure of money by the respondent and its predecessors.

[2]   We are unable to see where any duty rested upon the defendant in this matter. No attack was made upon the Thompson title until this action was begun. There was no adverse possession. There was not even a notice of hostile claim other than might arise from constructive notice of the issuance of the second certificate of purchase, if the facts show such constructive notice. (*Karns* v. *Olney*, 80 Cal. 90, [13 Am. St. Rep. 101, 22 Pac. 57]; *Crouse-Prouty* v. *Rogers*, 33 Cal. App. 246, 250, [164 Pac. 901].) The Thompsons had a right to rest on the sufficiency of their own claim. If it was good, the other was a nullity, in the absence of an adverse possession. In any event, there seems to have been no substantial difference in the time during which defendants slept on their rights than characterized the acts of the plaintiff. Neither made any move until this suit to quiet title was filed by plaintiff and it was met by the answer of defendants. Defendants' claim was first in time. Plaintiff was logically the attacking party, and so long as it took no steps to jeopardize defendants' legal rights, there was no need for defendants to act. This is not a case where one party stands secretly by and allows another to expend money upon the other's land with knowledge that it is being done under a mistake of facts. Plaintiff had the same knowledge of the state of this title that defendants had. It should have made investigation or taken legal action earlier, if it wanted assurance against loss. The parties were at arm's-length holding hostile claims of title upon the same land.

The rule as to laches applicable to this case is well stated in *Kypadel Coal & Lumber Co.* v. *Millard*, 165 Ky. 432, [177 S. W. 270], cited in appellant's opening brief, where it is said: "Both parties are claiming under a record title from a common source, and the only question is superiority. Limitation or lapse of time does not perfect a defective record title in the absence of possession. If the situation of these two parties had continued ten, fifteen, or twenty years longer, and the question should then arise, as now, as to which title of record is superior, a plea of limitation would not avail for either party against the other. Appellants show that they have legally paid taxes on the land. . . . One cannot acquire title to the land of another by paying the taxes on it, nor will a claim of title under a void deed, although recorded, ripen into a fee by lapse of time, nor will

limitations run against the owner of record in favor of a claimant not in possession, nor is it incumbent upon the owner to sue for cancellation of a void deed, or to take steps to remove a cloud upon his title. . . . If he desires to have the cloud removed the law affords a remedy, but he is not compelled to go to that expense, and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him. A mere claim of title even of record, unaccompanied by adverse holding, will not start the statute." (*Liebrand* v. *Otto*, 56 Cal., 242, 248; *Sanborn* v. *South Florida Naval Stores Co.*, 75 Fla. 145, [78 South. 428].)

[3] A defendant holding the legal title, or a paramount claim to the legal title, is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title. (*Farmers' Loan & Trust Co.* v. *Denver L. & G. R. Co.*, 126 Fed. 46, [60 C. C. A. 588]; *Hays* v. *Marsh*, 123 Iowa, 81, [98 N. W. 604].)

It would be strange application of the doctrine of laches to hold in this instance that the plaintiff could maintain its attack upon the validity of defendants' claim of title, but that the defendants might not defend by showing the invalidity of plaintiff's claim. Defendants' right of action is no more stale than that of plaintiff. Both arose at the same time. When plaintiff redeemed from the tax sale and obtained a certificate of purchase from the state, a right of action arose in favor of each claimant against the other where neither had a right of action before.

The same argument applies to the plea of the statute of limitations. Plaintiff commences this action nine years after its right of action accrued, and interposes the plea of the statute of limitations against an affirmative defense which arose at the same time.

In any event, this is not a case where the statute of limitations has run against either of the parties. [4] An outstanding adverse claim, which amounts only to a cloud upon the title, is a continuing cause of action, and is not barred by lapse of time, until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely. Each day's assertion of such adverse claim gives a renewed cause of action to quiet

title until such action is brought. (*People* v. *Center*, 66 Cal. 551, 565, [5 Pac. 263, 6 Pac. 481]; *Hyde* v. *Redding*, 74 Cal. 493, [16 Pac. 380]; *Kypadel Coal & Lumber Co.* v. *Millard, supra.*)

If respondent's contention could be maintained the plaintiff here would be permitted to establish title to this land by reliance upon a four-years' statute of limitations under mere color of title and payment of taxes, whereas it requires five years under such a claim with actual, open, and continuous adverse possession to obtain title by prescription.

The decisions in *Hynes* v. *M. J. & M. M. Consolidated,* 168 Cal. 651, [144 Pac. 144], and *Aikins* v. *Kingsbury,* 170 Cal. 674, 675, [151 Pac. 145], relied upon to sustain the plea of laches, do not apply to the facts of this case.

In both of the cases cited the application of the doctrine was sought against the *plaintiffs* for their delay in bringing suit. In the Hynes case the defendants were in actual possession of the premises and had, with the knowledge of plaintiff, expended a large sum of money in the successful development of oil wells on the property. In the case of *Aikins* v. *Kingsbury* the proceeding was by *mandamus* to compel the issuance by the state of a patent to school lands under a certificate of purchase to one Brackett. There had been a judgment of foreclosure against the defendant for default in his payments, and an alleged termination of his rights under an act of the legislature declaring such rights forfeited. As is stated in the opinion: "For more than thirty-eight years no attention was paid to the obligation to pay interest in advance each year to the state. Meanwhile the state had at least attempted foreclosure proceedings and in 1889 had constructively notified all persons interested in the matter of the intention to disregard any asserted rights to the land arising under the Brackett purchase unless the arrears should be paid, yet nothing was done by the holder of the certificate which had been issued to Brackett until after the completion of the sale to Phillips."

The above was an action to compel specific performance, and in such cases it is incumbent upon the plaintiff to have acted with all the diligence the nature of the case will permit. (*Henderson* v. *Hicks*, 58 Cal. 364; *Hicks* v. *Lovell,* 64 Cal. 14, [49 Am. Rep. 679, 27 Pac. 942]; *Fowler* v. *Sutherland,* 68 Cal., 414, 418, [9 Pac. 674].)

The findings of the trial court barring the defense in this action for laches and under the statute of limitations are not supported by the evidence.

The judgment is reversed.

Lennon, J., Wilbur, J., Lawlor, J., Shaw, C. J., and Shurtleff, J., concurred.