[Civ. No. 4775. Second Appellate District, Division Two.—November 15, 1927.]

H. G. WEYSE et al., Respondents, v. HARVEY BIEDEBACH, Appellant.

738

Fred W. Heath for Appellant.

Charles Lantz, Winslow P. Hyatt, and Frederick C. Huber for Respondents.

CRAIG, Acting P. J.—This is an appeal by the defendant Biedebach from the same judgment from which the plaintiffs and respondents herein appealed in *Weyse* v. *Biedebach,* Civil No. 4596, decided by this court on November 15, 1927, and reported *ante,* p. 712 [261 Pac. 1086]. Respondents also appealed from orders relieving Biedebach from default and allowing him to file his bill of exceptions, and settling the same, in this appeal. (*Weyse* v. *Biedebach, ante,* p. 712 [261 Pac. 1086].)

The first point here to be decided is as to whether or not the parties plaintiff were legally empowered to maintain this suit to quiet title. It is contended by appellant, and appears from the record, that on April 21, 1910, the articles of incorporation of the Antioak Leather Company provided for a board of directors consisting of seven members; and that on that date by a resolution of all of its stockholders, it was voted that this number be diminished to five directors, and on the same date by unanimous vote a board of five members was elected, consisting of H. G. Weyse, A. W. Hutton, J. C. Hentzy, W. E. Hutton and Allan Melrose, the five plaintiffs in this suit. At that time the Civil Code, sections 290 and 362, provided that a majority of the stockholders of a corporation might diminish the number of directors; that a certificate of such change must be filed with the secretary of state and county clerk; and that no provision of said sections should be construed as authorizing an increase or diminishing of the number of directors without complying with the special provisions of the Civil Code. The statutory certificate mentioned was not filed. One of the original seven directors died and one resigned. Thereafter, and on March 1, 1913, the corporation forfeited its charter by failure to pay its state license tax. During the fall of 1920, appellants Weyse and the Huttons met in the offices of the latter and elected to institute a suit to quiet title to lots 1 to 39, inclusive, of the Hay Tract Addition to Nadeau Park, and adjoining property, as a result of which meeting this action was commenced.

It is contended by appellant that having failed to file the certificate required by the Civil Code, the attempted diminution of the number of directors was ineffectual; that the legal board comprised seven members, two of which offices were vacant, and hence that a quorum consisted of at least four. It is argued therefrom that the three directors who instigated the suit—A. W. Hutton, W. E. Hutton and H. G. Weyse—had not legally any authority to prosecute this action. It appears, however, that all five surviving directors were parties plaintiff, and in any event appellant's objection to the proceeding amounts to no more than a plea in abatement based upon the alleged incapacity of the plaintiffs to sue. This is an objection which must be presented by demurrer if the fact appears upon the face

of the complaint, and if it does not so appear it must be presented by answer. (Code Civ. Proc., secs. 430, 433, 434; *Labory* v. *Orphan Asylum,* 97 Cal. 270 [32 Pac. 231]; *First Nat. Bank* v. *Henderson,* 101 Cal. 307 [35 Pac. 899]; *Ward Land & S. Co.* v. *Mapes,* 147 Cal. 747 [82 Pac. 426]; *Nicholson* v. *Auburn Gold Min. Co.,* 6 Cal. App. 547 [92 Pac. 651]; *Reed & Co.* v. *Harshall,* 12 Cal. App. 703 [108 Pac. 719]; *Riverdale Min. Co.* v. *Wicks,* 14 Cal. App. 526 [112 Pac. 896]; *Crittenden* v. *Superior Court,* 166 Cal. 340 [136 Pac. 287]; *Agricultural Club* v. *Hirsch & Son,* 39 Cal. App. 433 [179 Pac. 430].) Appellant having raised this question for the first time on appeal, it has been waived, and cannot now be considered. (*California Savings & Loan Soc.* v. *Harris,* 111 Cal. 133 [43 Pac. 525].)

▇ Upon the merits of the case, as we observed in *Weyse* v. *Biedebach, ante,* p. 712 [261 Pac. 1086], the appellant in this case purchased lot 21, and thereafter acquired from Dawson and others lots 1, 3, 4, 5, 6, 7, 22, and 23, but the trial court rendered judgment in his favor as to the last-mentioned eight lots only, decreeing to the plaintiffs all other properties in suit, including lot 21. Appellant contends that his title to this lot should also have been quieted. As heretofore determined by this court, in affirming the judgment in the other appeal, the tax deeds were invalid, but constituted sufficient color of title to support an adverse possession, provided all of the other elements were shown to have existed. Appellant testified that in July, 1914, he and the purchasers of adjoining lots measured their properties, and posted notices bearing their names and addresses, with the word "Owner" thereon; that there was an oil tank on lots 21 and 22; that he visited the property frequently, measured the oil, which he sold, and thereafter removed the tank; that he paid all taxes on lot 21 from 1908 to 1920, and that at no time did anyone interfere with or question his right to possession; that he leased lot 21 to a Japanese in 1917, for a period of three years. During cross-examination, however, appellant admitted that his tenant paid but ten dollars on account of rent, planted nothing and moved away at the end of the first year. Appellant's own witnesses swore that although they had seen livestock and grading implements of respondents' tenants on the property, they had not seen

other use made of it, and one who had known the property for twenty years, admitted that he had never seen Biedebach on the lot. We find no evidence tending to show that he did more than sell the oil and tank, and to lease the lot in 1917, for which he received practically no rent. Aside from paying taxes, no evidence is called to our attention which tends to indicate that appellant exercised dominion over, or occupied, personally or otherwise, the lot in question, except for a few months. The trial court had all of the witnesses before it and was cognizant of the circumstances. It decided adversely to appellant in this instance, and although a motion was thereafter made for modification of the decree, the motion was denied. We are impelled to remark that the briefs in this case are exceedingly meager and of slight assistance. In many instances quotations from the record do not indicate where therein they may be found, and authorities cited are not applicable. Nevertheless, we have made an exhaustive study of the evidence and a thorough examination of the statutes and decisions of this state, from which we are convinced that even without the application of the salutary rule in courts of review that all intendments must be resolved in favor of the decrees of tribunals of original jurisdiction, a judgment for appellant as to lot 21 would not have been justified. ■ True, the deed under which he claimed this lot was *apparently* valid, and in such a case the fact that it was void, or voidable, or had been executed by one having no title, would not constitute a bar to his defense or to a cause of action to quiet title by cross-complaint. (*Millett* v. *Lagomarsino*, 107 Cal. 102 [40 Pac. 25]; *Webb* v. *Winter*, 135 Cal. 455 [67 Pac. 691].) But to sustain a title by adverse possession it is incumbent upon the claimant to show actual, continued occupation and possession for a period of five years, in addition to the payment of state, county, and municipal taxes levied and assessed upon the property. (Code Civ. Proc., secs. 322, 323, 325.) This requirement appellant did not meet.

Appellant next insists that respondents ought not to recover a judgment quieting title to other property described in the pleadings because, it is asserted, the conveyances through which the corporation originally attempted to acquire title did not correctly describe the property, and hence

that the legal title did not vest in the corporation or in its trustees. Specifically stated, it is contended that both the deed to the Antioak Leather Company, and to its vendor, described the property conveyed, with the following provision: "and leaving residue of land in said southwest quarter of said section belonging to or claimed by said Anton Mallachowitz and wife *in as nearly a square form as possible* in northwest corner of said lands lying east of and fronting said railroad. . . . " It is also asserted, and appears from copies of conveyances in the record, that the deed to an antecedent owner contained the following language: "Also all that piece or parcel of land being a portion of the southwest quarter, section 15, township 2 south, range 13 west, San Bernardino Meridian, lying immediately adjoining the Los Angeles and San Pedro Railroad, on the *westerly* side thereof, *containing 12 acres* of land more or less"; "Also all that piece or parcel of land being a portion of the southwest quarter, section 15, township 2 south, range 13 west, San Bernardino Meridian, lying immediately adjoining the Los Angeles and San Pedro Railroad on the *easterly* side thereof, and *near* the south line of said quarter section, the said land being in a square form or piece on the line of said railroad *containing eight acres* . . . "

It is contended by appellant that the map of the tract in controversy shows the railroad making an acute angle with the north line, so that a *square* is impossible; that the property lying on the westerly side of the railroad is not bounded either on the north or the south side; and that as to the portion last mentioned, "near may mean an inch, a foot, a rod, or a chain distant from the south line," and that in these three instances the descriptions are so indefinite as to render any attempted conveyance containing them ineffectual and therefore invalid.

With respect to the "square," as well as the twelve-acre piece and that of eight acres "near the south line," our attention is not called to any attempted showing in the record, and we have found none, to the effect that either one was included in the conveyances, or intended to be included. As to the piece first mentioned, the deeds, as already observed, described certain lands, and were limited as "leaving a residue . . . in as nearly a square form as

possible.'' One Reyes originally acquired title to the entire southwest quarter of section 15 by United States patent, and thereafter Mallachowitz acquired the south half of said quarter. Later conveyances excepted the eight acres, as well as the twelve acres, more or less, here in controversy. We are concerned only with the question as to whether or not the deeds to the Antioak Company were valid. ██
An exception withdraws some part of the thing described as being granted, and which would pass but for the excepting clause. (*Sears* v. *Ackerman*, 138 Cal. 583 [72 Pac. 171]; *Pitcairn* v. *Harkness*, 10 Cal. App. 295 [101 Pac. 809].) ██ The granting part of a deed is not invalidated by a defect in the exception, but the exception itself becomes ineffectual if not properly described, and the grant remains in force. (*Marcone* v. *Dowell*, 178 Cal. 396 [173 Pac. 465]; *Tennant* v. *Tennant M. Home*, 167 Cal. 570 [140 Pac. 242]; *Lange* v. *Waters*, 156 Cal. 42 · [19 Ann. Cas. 1207, 103 Pac. 889].) ██ Hence, the question as to the validity of the exceptions, or the proper description of them, is not here before the court, for their decision would not affect the validity of the deeds in question.

██ H. M. Mitchell, as sheriff, executed to A. H. Wilcox, one of the intervening owners, a deed of certain of the property here involved, on April 12, 1880. It is asserted that the sheriff's term had been expired, and that said deed was void because the sheriff had no authority to execute it. It appears, however, that at that time the statutes required that an outgoing sheriff complete the execution of writs which he had ''begun to execute by the collection of money or a levy on property.'' Such was the common-law rule and the law of this state until 1883. (Hittell's Gen. Laws, sec. 6885; *Wood* v. *Lowden*, 117 Cal. 232 [49 Pac. 132]; *Perrin* v. *McMann*, 97 Cal. 52 [31 Pac. 837]; *In re Baker*, 32 Cal. App. 320, 323 [162 Pac. 922].)

██ Other points attempted to be advanced are to the effect that certain defective affidavits in the tax office were subsequently corrected, rendering the deeds valid; that although the assessments were admittedly excessive, this fact would not of itself render valid deeds invalid; and that upon arrival of other claimants to the property, respondents vacated. It is argued therefrom that respondents' judgment quieting title, in the face of valid deeds to other per-

sons, and of evidence of disseizin, is erroneous. As we have already shown, the properties here involved either were never deeded to the state, and deeds from the state did not and could not convey title, or, in some instances, title was not acquired by appellant. In either event neither by his answer, cross-complaint, nor proof has appellant established a defense to the plaintiffs' assertion of title as against him, and this being true, he is not in a position to complain of the findings and decree of the trial court.

Finally, it is argued that the plaintiffs tendered to appellant the sum of four thousand dollars, merely by "producing" that amount, as a purported offer to reimburse him for whatever moneys he might be entitled to recover for disbursements in their behalf; that inasmuch as this was not the exact amount, it was but a subterfuge, and constituted no tender at all. However, section 2076 of the Code of Civil Procedure requires that specific objection to the amount and terms of a tender is requisite to subsequent complaint based thereon, in a legal proceeding. This the appellant does not appear to have made, and the point cannot now be raised for the first time.

The judgment is affirmed.

Thompson, J., and Collier, J., pro tem., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 15, 1927.