[Civ. No. 24553.    Second Dist., Div. One.    Aug. 29, 1960.]

MARY LOUISE WAREHAM, as Administratrix, etc., Appellant, v. DIANA RANDOLPH, as Administratrix, etc., Respondent.

Eugene S. Ives and Martin J. Kirwan for Appellant.

Sherman, Weissman & Meyers for Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment quieting the title to certain real property, consisting of 10 acres in the Lancaster district in Los Angeles County.

In a complaint filed April 14, 1958, the plaintiff as the administratrix of the estate of Lydia Adams alleged that Lydia Adams died on April 22, 1948, in Arizona and that at the time of her death she was possessed of the property in question; that Lydia Adams had acquired the same from her husband,.James S. Adams, by a quit claim deed recorded February 1, 1944. Further, that the plaintiff had commenced an action in Los Angeles County Superior Court, Number 640136, in which action a judgment quieting the title of the plaintiff was entered on March 26, 1956. That action, included, as a defendant, the Harmon Enterprises, Inc., a California corporation. The complaint also set forth that Harmon Enterprises, Inc., in Superior Court Case Number S.F.C. 1423 (Los Angeles County) on September 7, 1955, had obtained a judgment quieting its title to the property against P. A. Powell, the administrator of the estate of Frank Skutt, deceased, and others; and that defendant, Diana Randolph, claimed an interest in the property by reason of a grant deed secured from Walter Thompson and Eugenia Thompson and that defendant Diana Randolph has no interest in the property.

Diana Randolph answered the complaint and stated therein among other things that the plaintiff had commenced action Number 640136, that the judgment therein was by stipulation against Harmon Enterprises, Inc., a corporation, and that at the time of the entry of the judgment therein on March 26, 1956, Harmon Enterprises, Inc., had no interest in the property. Further that the judgment secured by Harmon Enterprises, Inc., in S.F.C. 1423 on September 7, 1955, against P. A. Powell, administrator of the estate of Frank Skutt, deceased, was obtained by fraud upon the court; that Diana Randolph had obtained a deed from Walter Thompson and

Eugenia Thompson, the latter of whom is the sole heir of Frank Skutt, who was the owner and entitled to the possession of the property at the time of his death on or about February 25, 1950.

An amended cross-complaint to quiet title was filed by Diana Randolph on November 24, 1958, wherein among other things she alleged that she was the owner of the property and that the cross-defendants had no interest in the same; that the property was unimproved and that neither the cross-complainants nor the cross-defendants were in physical possession thereof.

Wareham, individually and as administratrix of the estate of Lydia Adams, deceased, answered the cross-complaint and admitted that she was not in physical possession of the land; that it did not appear that the cross-complainant or her predecessor was possessed of the property within five years before the start of the action as provided in section 318 of the Code of Civil Procedure; that the cross-complainant was guilty of laches and unreasonable delay in bringing the action; that her (*i.e.* Mary Louise Wareham's) predecessors in interest acquired the property in about 1930 and ever since have been the owners of record and in possession, have paid the taxes upon the same and managed and controlled the property as their own. Further, that Frank Skutt died in 1950, that James S. Adams, through whom she (*i.e.* Mary Louise Wareham) asserts her claim, died prior to Skutt's death; that by reason of the delay in asserting any claim to the property, those persons who could have been available to testify are now dead. Also, that the claim asserted by the cross-complainant is barred by reason of the judgment quieting title in the cross-defendant, which judgment was entered March 26, 1956, in action Number 640136.

After the filing of the complaint and before the trial Diana Randolph was appointed the administratrix of the estate of Frank Skutt, deceased. It was stipulated at the time of trial that Diana Randolph should be joined as defendant and cross-complainant as the administratrix of the estate of Frank Skutt. The judgment went in favor of Diana Randolph as the administratrix of the estate of Frank Skutt.

It was stipulated that there was a chain of title to Lena Skutt. Lena Skutt, the wife of Frank Skutt, conveyed the property to him by deed dated and signed May 18, 1923, and recorded October 15, 1928. The property was desert in character, unfenced and unimproved.

The plaintiff produced Mrs. Gipe as a witness. Mrs. Gipe testified in effect that she was the daughter of James Adams and Lydia Adams and was born at Fort Huachuca, Arizona, in 1927; that when she was 3 years old she moved from the area of her birth but that she and her family continued to visit at Fort Huachuca. Her first memories of Frank Skutt were when she made such visits when she was 6 or 8 years old. She visited the Lancaster area where her father apparently resided in the early spring of 1933 or 1935 and remembers going out to some property and "looking for the section line and the roads to get into it and walking across it and around it and all through." Her mother and father were not living together at the time she made the visits to the property. She recalled that the area was desert country and cattle were grazing around the property. There were no fences. She also stated that she visited Lancaster at least once a year to see her father between the years 1933 to 1941 and that after 1941 she did not visit "the property" until 1949. At the latter time she went to look at it to determine its value because it was a part of her mother's estate. She thereafter visited the property once every two years or so. The last time she went out to the property was in 1956.

She did not remember whether she and her mother found any section markers when they were looking for them or what the markers designated if they did find any such markers. Not knowing where the markers were she obviously did not know whether her father's cattle were on the property in question or on some other property. She did not remember the names of the people or the place where she and her mother stayed when they were in the Lancaster area on the visits. She had only a vague recollection of other matters with reference to the property. Her mother and father were separated as heretofore indicated and her mother received the quit claim deed to the property from Mr. Adams dated January 12, 1944.

There was no evidence that James Adams was vested with a title to the property, unless the statements of Mrs. Gipe (which as she contended) showed a sufficient adverse possession by her father from 1933, 1934 or 1935 to 1941.

In short, plaintiff's title depends upon either the quit claim deed from James Adams to Lydia Adams in 1944 or upon the claim of adverse possession of the property. Mr. Adams and thereafter his wife and the estate of Lydia Adams paid taxes on the property up to April 11, 1955. Frank

Skutt died in Arizona in 1950 and his estate was probated in that state.

Appellant's first contention is that it was error as a matter of law for the court to determine that the plaintiff and her predecessors in interest had not secured title to the property by adverse possession. She claims for two separate periods, namely from the years 1933 to 1941 and for the years 1949 to 1955. From 1941 to 1949 she did not return to or see the property. Sections 322, 323, 324 and 325 of the Code of Civil Procedure are set forth in the footnote hereto.[1]

---

[1]Section 322:

"When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract."

Section 323:

"For the purpose of constituting an adverse possession by any person claiming a title, founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

"1. Where it has been usually cultivated or improved;

"2. Where it has been protected by a substantial inclosure;

"3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing-timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant;

"4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated."

Section 324:

"Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

Section 325:

"For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved.

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land."

224

■ The claim of plaintiff for the first term of years, namely from 1936 to 1941 is not founded on a written instrument. That claim of necessity comes under the provisions of sections 324 and 325 of the Code of Civil Procedure. There was no substantial enclosure constructed or otherwise, nor was the property cultivated or improved during the time in question. Furthermore, in the event the land had been occupied, only that land *actually* occupied is deemed to have been held adversely. (See *Los Angeles Inter-Urban Railway Co.* v. *Montijo*, 153 Cal. 15 [94 P. 97] and *Sanchez* v. *Grace M. E. Church*, 114 Cal. 295, 299 [46 P. 2].)

■ Considering next the claim that there was adverse possession from 1949 to 1955, Mrs. Gipe stated that after her mother died she visited the property but made no use of it, although she had previously indicated that it was suitable for pasturage of cattle; she said she visited the property about once every two years from 1949 to 1955, or a total of not to exceed three or four times. She also testified that when Harmon Enterprises, Inc. (which is not a party to this action, and has no connection with the defendants or cross-complainants or their predecessors in interest) made a claim against the property, she sued, claimed the title in herself and paid for a stipulated judgment. The plaintiff asserts that the claim is one founded on an instrument in writing, namely the deed from James Adams to Lydia Adams and therefore comes under the provisions of sections 322 and 323 of the Code of Civil Procedure. There was no evidence that plaintiff, or any of her predecessors, during the period from 1949 to 1955 cultivated or improved the property or that she protected it by a substantial inclosure or any inclosure at all or that the property was used for the supply of fuel, for fencing-timber or for pasturage, or for the ordinary use of the occupant. Her only activity with reference to the property for the years stated was to visit it from time to time, not to exceed three or possibly four times in all.

There was evidence from which an inference could be drawn that from about *1945* the land in the general area was developed into small farms with buildings thereon. We entertain no doubt that three visits over a period of five or six years to see a ten acre parcel of land does not satisfy the provisions of the Code of Civil Procedure for the acquiring of a title by adverse possession. (See 2 Cal.Jur.2d 537, § 32, and p. 540, § 35; *Comstock* v. *Finn*, 13 Cal.App.2d 151, 155 [56 P.2d 957];

*Gioscio* v. *Lautenschlager*, 23 Cal.App.2d 616 [73 P.2d 1230] ; *Philp* v. *Hobart*, 103 Cal.App.2d 446 [229 P.2d 783].)

In *Madson* v. *Cohn*, 122 Cal.App. 704, 706-707 [10 P.2d 531] it is stated as follows:

"The necessary requirements for establishing a claim of adverse possession, under a color of title, are set forth in section 322 of the Code of Civil Procedure, and include 'a continued occupation and possession of the property.' Such possession and occupation is further defined in section 323 of this code. The general rules applying, where it is sought to establish adverse possession, are thus laid down in *Unger* v. *Mooney*, 63 Cal. 586 [49 Am.Rep. 100] :

" 'The adverse character of the possession must in every case be manifested to the owner. The owner must be notified, in some way, that the possession is hostile to his claim, or the statute does not operate on his right. (See remarks, in opinion, in *Thompson* v. *Pioche*, 44 Cal. 517, 518; *Trustees etc. Town of Fort [East] Hampton* v. *Kirk*, 84 N.Y. 220 [38 Am.Rep. 505] ; *Culver* v. *Rhodes*, 87 N.Y. 354; *Abell* v. *Harris*, 11 Gill & J. (Md.) 371, per Dorsey, J.) As was said in the case cited from 84 N.Y., per Andrews, J., "the object of the statute defining the acts essential to constitute an adverse possession is, that the real owner may, by unequivocal acts of the disseizor, have notice of the hostile claims and be thereby called upon to assert his legal title." Hence, an open and notorious occupation with hostile intent is a necessary constituent of an adverse possession. Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient.'

"In *Stanley* v. *Westover*, 93 Cal.App. 97 [269 P. 468, 473], the court said: 'One of the elements necessary to constitute adverse possession is that the adverse claimant must have been in the actual possession of the real property for a continuous period of five years.'

"In *Eddy* v. *Demichelis*, 100 Cal.App. 517 [280 P. 389, 390], it is said: 'The presumption of ownership is with the paper title. Clear evidence is necessary to overcome this presumption. The adverse claim of right must not only exist in the mind of the claimant but must be proven to have been communicated in some way to the owner so that his failure to object may be taken against him as an acknowledgment of or acquiescence in the right claimed.' (Citing cases.)

"Proof of occasional occupancy is not sufficient to

establish a title by adverse possession. (*Maginnis* v. *Hurlbutt*, 49 Cal.App. 460 [193 P. 606].) In *Huling* v. *Seccombe*, 88 Cal.App. 238 [263 P. 362], it was held that the occasional cutting of wild grass or weeds was not sufficient proof of occupancy or possession upon which to base a claim of adverse possession. In *Weyse* v. *Biedebach*, 86 Cal.App. 736 [261 P. 1092, 1095], evidence to the effect that the appellant had posted upon the property a notice bearing his name and address with the word 'owner' thereon, that he had paid all taxes, and that he had removed from the premises a tank with the oil contained therein, was held not sufficient to show the required occupancy or possession. In that case the court said: 'But to sustain a title by adverse possession it is incumbent upon the claimant to show actual, continued occupation and possession for a period of five years, in addition to the payment of state, county, and municipal taxes levied and assessed upon the property. (Code Civ. Proc., §§ 322, 323, 325.)' "

There is no evidence in this case that Frank Skutt, the record owner of the property ever had notice, actual or otherwise, of either of the adverse claims of plaintiff or her predecessors. True it is that the members of the Adams family paid the taxes for a time, but the payment of taxes in and of itself does not necessarily imply a constructive notice of adverse possession. It may have been that Skutt and Adams had an understanding that Adams could use the property if he paid the taxes thereon.

The second contention of appellant is that the court erred as a matter of law in finding that respondent was not barred by her laches from claiming any interest in the land. Her theory is grounded upon three reasons, namely: (1) that plaintiff expended $850 to quiet the claim to title to the property made by Harmon Enterprises, Inc., while the defendants and cross-complainants stood "idly by"; (2) that Frank Skutt did not pay taxes on the property from 1930 until the time of his death; and (3) that defendant became interested in the property only upon its becoming valuable.

It is to be remembered that plaintiff claims her predecessors in interest became the owners of the property in 1938, 1939 or 1940. At no time did Mr. or Mrs. Adams attempt to establish a record of title to the property nor did they, during the lifetime of Frank Skutt, attempt to establish against Skutt any right or title to the property. When Mrs. Adams received the quit claim deed from her husband she must have known that the husband had no record title to the property. Mrs.

Adams took no steps during her lifetime to establish title to the property.

There can be no question that Skutt and ultimately his estate held the legal title or a paramount claim to the legal title and as said in *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420, 426 [202 P. 449]:

"A defendant holding the legal title, or a paramount claim to the legal title, is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title. (*Farmers' Loan & Trust Co.* v. *Denver L. & G. R. Co.,* 126 F. 46 [60 C.C.A. 588]; *Hays* v. *Marsh,* 123 Iowa 81 [98 N.W. 604].)

"It would be strange application of the doctrine of laches to hold in this instance that the plaintiff could maintain its attack upon the validity of defendants' claim of title, but that the defendants might not defend by showing the invalidity of plaintiff's claim."

The members of the Adams family had a duty to act and apparently did nothing until the property became valuable.

As to the assertion in effect that the defendant or her predecessors should have intervened in the action by plaintiff against Harmon Enterprises, Inc., the answer is that the Skutt family members were not parties to the action. (See *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317].) There is no evidence that Skutt or any of his successors had any notice or knowledge of the action. Furthermore, there is testimony from which an inference could be drawn that the heirs of Skutt had no knowledge that they were the owners of the property at the time of the Harmon Enterprises, Inc., action.

It was said in *Hyde* v. *Redding,* 74 Cal. 493 at 499-500 [16 P. 380]:

". . . As to defendant's alleged adverse claim, if plaintiff's legal right to the possession was established, the defendant's adverse claim was . . . to be tried as if plaintiff had been in actual possession at the beginning of the action. And where a plaintiff has been in possession of land, he cannot be guilty of laches in the bringing of a suit to remove a cloud at any time before an action has been brought to disturb his possession, or to deprive him of any enjoyment of his right. (*Liebrand* v. *Otto,* 56 Cal. 248.) The continued assertion of an adverse claim constitutes from day to day a new cause of action."

Appellant places considerable reliance in the holding in

*Secret Valley Land Co.* v. *Perry, supra,* 187 Cal. 420. However, it is set forth in that case at pages 425-426 as follows:

"We are unable to see where any duty rested upon the defendant in this matter. No attack was made upon the Thompson title until this action was begun. There was no adverse possession. There was not even a notice of hostile claim other than might arise from constructive notice of the issuance of the second certificate of purchase, if the facts show such constructive notice. (*Karns* v. *Olney,* 80 Cal. 90 [13 Am.St.Rep. 101, 22 P. 57]; *Crouse-Prouty* v. *Rogers,* 33 Cal.App. 246, 250 [164 P. 901].) The Thompsons had a right to rest on the sufficiency of their own claim. If it was good, the other was a nullity, in the absence of an adverse possession. In any event, there seems to have been no substantial difference in the time during which defendants slept on their rights that characterized the acts of the plaintiff. Neither made any move until this suit to quiet title was filed by plaintiff and it was met by the answer of defendants. Defendants' claim was first in time. Plaintiff was logically the attacking party, and so long as it took no steps to jeopardize defendants' legal rights, there was no need for defendants to act. This is not a case where one party stands secretly by and allows another to expend money upon the other's land with knowledge that it is being done under a mistake of facts. Plaintiff had the same knowledge of the state of this title that defendants had. It should have made investigation or taken legal action earlier, if it wanted assurance against loss. The parties were at arm's-length holding hostile claims of title upon the same land.

"The rule as to laches applicable to this case is well stated in *Kypadel Coal & Lumber Co.* v. *Millard,* 165 Ky. 432, [177 S.W. 270], cited in appellant's opening brief, where it is said: 'Both parties are claiming under a record title from a common source, and the only question is superiority. Limitation or lapse of time does not perfect a defective record title in the absence of possession. If the situation of these two parties had continued ten, fifteen, or twenty years longer, and the question should then arise, as now, as to which title of record is superior, a plea of limitation would not avail for either party against the other. Appellants show that they have legally paid taxes on the land. . . . One cannot acquire title to the land of another by paying the taxes on it, nor will a claim of title under a void deed, although recorded, ripen into a fee by lapse of time, nor will limitations run against the owner of record in favor of a claimant not in

possession, nor is it incumbent upon the owner to sue for cancellation of a void deed, or to take steps to remove a cloud upon his title. . . . If he desires to have the cloud removed the law affords a remedy, but he is not compelled to go to that expense, and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him. A mere claim of title even of record, unaccompanied by adverse holding, will not start the statute.' (*Liebrand* v. *Otto,* 56 Cal. 242, 248; *Sanborn* v. *South Florida Naval Stores Co.,* 75 Fla. 145 [78 South. 428].)''

We think that under the circumstances of this case there was no error and that the judgment should be affirmed.

Judgment affirmed.

Lillie, J., and Scott (Robert H.), J. pro tem.,* concurred.

A petition for a rehearing was denied September 27, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 26, 1960.

*Assigned by Chairman of Judicial Council.