498 P.2d 654

Lollin D. ORTON, Plaintiff and Appellant,

v.

William Bulloch ADAMS et al., Defendants and Respondents.

No. 12525.

Supreme Court of Utah.

June 22, 1972.

David P. Rhode, Salt Lake City, for plaintiffs-appellants.

Vernon B. Romney, Atty. Gen., David S. Young, Larry V. Lunt, David R. Irvine, Asst. Attys. Gen., Salt Lake City, for defendant-respondent.

Crockett, J., dissented and filed opinion in which Ellett, J., concurred.

1. 26 Utah 2d 371, 489 P.2d 1186 (1971).

Patrick H. Fenton, Cedar City, for plaintiff-appellant.

Sam Cline, of Cline, Jackson & Jackson, Milford, for defendants-respondents.

HENRIOD, Justice:

This is an action filed to subject certain lands to a judgment lien. A summary judgment denying such relief is affirmed, with costs to respondents.

In Orton v. Adams,[1] the precursor of the instant case, we held that there was no lien against the property of the defendant William B. Adams,[2] by virtue of a judgment against him, because the second judgment obtained to perpetuate the first, was rendered *after* the death of William B., relegating the judgment creditor to the sole remedy of collection from his estate.[3] The instant action simply is designed to relitigate the matter of ownership of land claimed to be in William B., obviously in order to levy against it,—which we said could not be done. The matter of delivery of the deeds is of no moment here and need not be determined under such circumstances, particularly since assuming, as does the plaintiff, that no delivery was effected, the property, as we have said, was not subject to lien foreclosure,—hence there is no issue of fact to resolve.

CALLISTER, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (dissenting).

Insofar as I am aware, or have been able to ascertain, this is not "an action filed to subject certain lands to a judgment lien." Neither the plaintiff nor the defendants have so contended since the prior decision of this court, 21 Utah 2d 245, 444 P.2d 62, was issued. In that decision it was plainly enunciated that the judgment which had been rendered against William B. Adams in the original action in September of 1958 was not a lien upon the property in question.[1]

It should be kept clearly in mind that the appeal we now consider is from an order granting defendants' motion for summary judgment entered April 17, 1971, in the third separate action (Iron County Civil No. 5452) which involves these parties and subject matter. The original action to re-

---

1. 21 Utah 2d 245, 444 P.2d 62 (1968).

2. Not to be confused with his son and defendant, William Bulloch Adams.

3. Where statutorily it says: "Such judgment is not a lien on the real property of the deceased party, but is payable in the course of administration of his estate." See Orton v. Adams, footnote 1.

1. As explained in that decision, this was so because the judgment in the latter case had not been entered before the death of William B. Adams, and by reason of the provisions of Sec. 104–30–13, U.C.A.1943 (now Sec. 78–22–1.1, U.C.A.1953, Pocket Supp.) "such judgment is not a lien on the real property of the deceased party, but is payable in the course of administration of his estate."

cover for injuries to the plaintiff (Iron County Civil No. 3750) was in 1958. The second action (Iron County Civil No. 4585) was filed in 1964 to renew the prior judgment. But no judgment was actually entered thereon until after the death of William B. Adams in 1966, which was ruled upon in the prior appeal; and this third action was commenced in July 1969, a year after the remand of that case. The record is somewhat voluminous and confusing because on this appeal there is designated and brought up the records in all three cases, and they are lumped together in one file.

In the complaint in the instant (the third) case the plaintiff expressly concedes that the effect of our prior decision is that the lands in question are not subject to a lien. He recites in Paragraph IV thereof that:

. . . that part of the judgment declaring same to be a lien against the real property listed in said judgment was set aside, *but in all other respects said judgment was affirmed.*

After conceding that the prior judgment is not a lien upon the properties in question, plaintiff's complaint recites and relies upon the findings in the prior case, that there had been no delivery of the deeds, and the prayer of the complaint is that: said conveyances be set aside and that a decree be made declaring said property to be made available for the general creditors of said William B. Adams, now deceased. . . ..

Examination of the record will show that neither the parties nor the trial court had any concern but that the question of the lien had been set at rest as stated above; and that the controversy in the instant case was whether the properties belonged to the defendants, the family of William B. Adams, or were part of his estate. Corroboration of what has just been said is found in the briefs of both parties. In response to such statement in the plaintiff's brief, the opening statement in the defendants' brief is:

Respondents agree with the opening statement set forth in appellant's brief "Plaintiff and appellant seeks to have eight conveyances of land from William B. Adams to the defendant set aside . . . ."

For reasons not touched upon in the main opinion, I cannot agree that the order granting the summary judgment was proper. The order states the basis for granting the motion as follows:

.. The answer of the defendants pleaded as affirmative defenses, to-wit: (1) that the plaintiff's cause of action was and should be determined to be *barred by the several statutes of limitations* more particularly set forth in defendants' answer; *and* (2) that the cause of action was and

should be declared to be *barred by* the pleaded defense of *res judicata*.

The Court holds that the plaintiff's cause of action is barred by (1) limitations as pleaded in the defendants' answer, and (2) is likewise barred by the defense of *res judicata*.

## THE ISSUE OF RES JUDICATA

The defendants' answer contains the averment that:

The plaintiff's right to have the conveyances set aside has heretofore been tried in said court between the parties and was finally adjudicated *to the end that the deeds were not set aside,* but the plaintiff was awarded a lien against the premises, which lien was later set aside and held for naught by the Supreme Court of the State of Utah.

It will thus be seen that notwithstanding the fact that the actual finding of the trial court in the prior case was that there was no delivery of the deeds, (and thus the defendants would acquire no title therefrom) and that this was expressly affirmed by the decision of this court, the defendants' answer as just quoted attempts to twist that adjudication into a judgment in their favor, as though the deeds had been delivered and they had received title to the property, which they now claim is res judicata. The mischief and the injustice here is that the trial court in granting a summa-

ry judgment in their favor, sustaining that averment, results in a complete distortion of the effect of the prior findings and judgment, which were affirmed by this court, in that it has exactly the opposite effect to what had been found and adjudicated, that is, that there had been no delivery of the deeds.

The record shows so plain as to be beyond question that the trial court had found in the prior case (that is, the second case, No. 4585) that there had not been any valid delivery of the deeds. In his memorandum decision Judge C. Nelson Day said:

The leaving of them [the deeds] with Mr. Dalley by the father in this case was done to avoid probate and that the leaving of said deeds with Mr. Dalley was not such as to constitute the delivery to the grantees named therein. . . .

The findings of fact contained similar clear and unequivocal recitals. This was expressly pointed out and sustained by this court in the prior decision which recites:

During his lifetime William B. Adams made deeds of his property wherein he named his children as the grantees of various parcels of land. He did this in order to avoid probate costs when he died. However, *as the trial court found, he never delivered the deeds.* The respondent obtained a judgment in tort against William B. Adams on September

19, 1958, and the children, appellants herein, *without authority from their father got possession of the deeds thereafter and had them recorded.*

I certainly agree that the prior decision is res judicata as to what it decided. But instead of deciding the issue in favor of the defendants as they now assert in their answer, which the summary judgment erroneously approves, the actual decision in that case was exactly opposite, that is, that there had been no delivery of the deeds. It should follow as a matter of law that the defendants acquired no rights therefrom.

## STATUTE OF LIMITATIONS

The other ground given for granting the defendants' motion for summary judgment, that the plaintiff's cause of action is "barred by the several statutes of limitations"[2] set forth in defendants' answer, is based upon the fallacious foundation of accepting the correctness of the defendants' averments that they have now acquired unassailable title to the properties by adverse possession. The critical question to be answered on this issue is whether under the facts disclosed by this record, there is shown the open, notorious, continuous and *adverse* occupancy necessary to establish such title[3] and justify granting the summary judgment in their favor. It is significant to have in mind that William B. Adams did not die until June 1, 1966, and the claim of title by these defendants on the basis of adverse possession for at least seven years prior to the commencement of the action filed in 1964 by the plaintiff would have to be based partly upon adverse possession against their father prior to his death.

There are two reasons why they should not succeed in their contention. The first that they should not be permitted to base even a claim of color of title upon their own wrongdoing in recording the deeds,[4] which have been held to be of no effect; and the second is that there was in fact no adverseness to the holder of the title. It is shown that as early as 1943 William B. Adams had created a partnership of the family enterprise of farming and stock-raising with his sons in which the father's lands were used. In fact during subsequent years the father had mortgaged the land on several occasions to raise funds to finance the operations. The sons themselves testified that this partnership only ended with the father's death in 1966. In

2. The statutes which defendants cite in support of their claim of adverse possession are: Secs. 78-12-5, 6, 7 and 8, U.C.A.1953.

3. Pender v. Jackson, 123 Utah 501, 260 P.2d 542 (1953); Weyse v. Biedebach, 86 Cal.App. 736, 261 P. 1092, 1095.

4. See State v. King, 77 W.Va. 37, 87 S.E. 170; and Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177.

order to predicate the acquisition of a title by adverse possession the circumstances must be such that the party who would be losing his property, either had actually known, or should have known, that his property is being claimed adversely to him by the one who attempts to assert such title.[5] This would not come into being in such a partnership arrangement unless by some overt acts that requirement was satisfied. By reason of the adjudication in the prior case, as stated above, the indication in this record is that the defendants did not acquire any title whatsoever in the properties by reason of the undelivered deeds; and the facts shown do not meet the requirements necessary to establish title by adverse possession in such manner as to justify the granting of the motion for summary judgment.

On the basis of what I have said herein, it is my opinion that: this court should in clear and certain terms reaffirm the finding of the trial court in the prior decision, that there was no delivery of the deeds of the properties in question to the defendants; and we should add thereto that insofar as this record discloses it is not shown that title to the lands described therein has ever been divested from William B. Adams (or his estate); nor that the defendants have established title to those lands by adverse possession.

Accordingly, the summary judgment rejecting plaintiff's complaint should be vacated and remanded for any desired further proceedings not inconsistent with the views herein expressed.

ELLETT, J., concurs in the dissenting opinion of CROCKETT, J.

---

5. Riter v. Cayias, 19 Utah 2d 358, 431 P.2d 788; Scott v. Hansen, 18 Utah 2d 303, 422 P.2d 525.