[No. 12803.    In Bank. — April 23, 1889.]

PETER BAKER ET AL., RESPONDENTS, *v.* THE FIREMAN'S FUND INSURANCE COMPANY, AND CHRISTOPHER R. BROWNE, INTERVENOR, APPELLANTS.

MORTGAGE — DEED AND DEFEASANCE — TENDER. — When a third person advances money to mortgagors to redeem land from a foreclosure sale by a mortgagee, and in consideration thereof receives a deed absolute in form from the mortgagors, and enters into a simultaneous agreement, under which the latter agree to purchase the land for a sum equal to the amount paid for redemption, the expenses of preparing the instruments, the premiums on policies of insurance, and an additional sum as compensation to the party advancing the money, and it is stipulated that time shall be of the essence of the contract, and that upon failure to fulfill the

agreement of purchase, the grantee of the deed "shall be released from all obligations to convey said property, and shall be entitled to immediate possession of the same, said parties of the second part shall forfeit all rights thereto, and said parties of the first part shall be entitled to a strict foreclosure of this contract," but there is no agreement that in any contingency the parties of the second part are to be released from their obligation to pay, *held*, that the transaction is a mortgage.

ID. — PAROL EVIDENCE. — Parol evidence is admissible to show that a deed and agreement of repurchase were intended as a mortgage, although as matter of law they constitute a mortgage upon the face of the papers.

ID. — REGISTRY OF DEED AND DEFEASANCE — NOTICE OF MORTGAGE. — When a deed and defeasance thereof are recorded, and together constitute a mortgage by legal construction, any subsequent grantee of the property is conclusively presumed to have had notice of the real nature of the transaction, and is put upon inquiry as to whether the mortgage was or was not paid, in whole or in part.

ID. — TENDER BY MORTGAGOR OF BALANCE DUE — STIPULATION AS TO TIME. — When a deed and defeasance together constitute a mortgage, a failure to tender enough money to pay the debt in time will not divest the mortgagor's title to the land, though the defeasance provides that time shall be of the essence, and that all rights of the mortgagor shall be forfeited upon his failure to comply with its terms.

ID. — ACTION TO REDEEM — CLOUD ON TITLE — CONDITIONS OF RELIEF — ACCOUNTING. — An action to redeem from a deed absolute in form, which was intended as a mortgage, is in effect merely an action to remove a cloud from the title. Such action may be brought at any time while the mortgagor is in possession of the land, upon condition of payment of what is due upon the mortgage; and upon the question of what is due, the mortgagors are entitled to a credit of whatever sums were realized by the mortgagee from insurance or from crops, and to be charged with taxes paid by the mortgagee, and all sums due under the terms of the contract.

ID. — INSURANCE BY MORTGAGEE — CREDIT ON MORTGAGE. — If it was agreed orally between a mortgagor and mortgagee, by deed absolute in form, accompanied by a written defeasance, that any insurance money received by the mortgagee should be credited upon the amount due, such money when received operates as a payment upon the mortgage debt *pro tanto*.

ID. — VOLUNTARY PAYMENT OF INSURANCE TO MORTGAGEE — REPRESENTATION OF OWNERSHIP — ESTOPPEL. — If a fire insurance company insures property in the name of a mortgagee, who represents himself to be the owner, and voluntarily pays the loss to him, with notice of the facts concerning the ownership, it is estopped from claiming the benefit of a forfeiture clause for untrue misrepresentation on that point, and it is immaterial whether the assured was owner or only a mortgagee.

ID. — EVIDENCE OF PAYMENT OF INSURANCE MONEY — TRANSFER BY MORTGAGEE TO INSURANCE COMPANY. — When a mortgagee, under a deed absolute in form, accompanied by a written defeasance, insures the buildings as owner, and the adjuster of the company refuses to make payment because the mortgagor is in possession, but the matter is arranged by a

deed to the insurance company by the mortgagor of all his interest, upon payment by them of all that was to be paid by the mortgagor, the positive testimony of the adjuster and of the mortgagor that there was no payment of the losses under the policies of insurance will not preclude a finding that the policies were paid, and that the mortgagor was entitled to a credit of the amount thereof, upon redeeming from the insurance company or its grantee.

EVIDENCE— CREDIBILITY OF WITNESSES. —The positive testimony of witnesses may be overcome by circumstances showing that they are mistaken. A court may reject the most positive testimony, though the witness be not discredited by direct testimony impeaching him or contradicting his statements. The inherent improbability of a statement may deny to it all claims of belief.

TRIAL — EQUITY CASE — SPECIAL ISSUES — IMPANELING JURY. — It is not error to impanel a jury in an equity case before framing the special issues to be submitted to them.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. C. Belcher,* and *J. W. Mastick,* for Appellants.

The contract was one of conditional sale, and not a mortgage. (*Grey* v. *Tubbs,* 43 Cal. 359; *Wilcoxson* v. *Stitt,* 65 Cal. 596; 52 Am. Rep. 310; *Morris* v. *Angle,* 42 Cal. 236; *Cook* v. *Lion Fire Ins. Co.,* 67 Cal. 368; *Manasse* v. *Dinkelspiel,* 68 Cal. 404; *Page* v. *Vilhac,* 42 Cal. 75; *Henley* v. *Hotaling,* 41 Cal. 26; *Farmer* v. *Grose,* 42 Cal. 169.) The written contract accompanying the deed could not be varied by parol evidence. (Code Civ. Proc., sec. 1856; Civ. Code, sec. 1625.) The amount found due cannot be deduced from the evidence by any arithmetical process, and the finding cannot be supported. (*Parke* v. *Frank,* 75 Cal. 364.) The policies of insurance were void. (May on Insurance, sec. 287; *McCormick* v. *S. F. & M. Ins. Co.,* 66 Cal. 361.) The insurance company was entitled to be subrogated to the mortgagor's rights. (*Foster* v. *Van Reed,* 70 N. Y. 19; 26 Am. Rep. 544; *Dick* v. *Ins. Co.,* 10 Mo. App. 376, 381; *Ætna Ins. Co.* v. *Tyler,*

16 Wend. 385; *Sussex County Ins. Co.* v. *Woodruff*, 24
N. J. L. 541; *Honore* v. *Lamar Ins. Co.*, 51 Ill. 409.)

*J. C. Campbell*, and *C. H. Clement*, for Respondents.

The deed and contract to reconvey were *prima facie* a
mortgage. (Civ. Code, sec. 2950; *Daubenspeck* v. *Platt*,
22 Cal. 330; *Farmer* v. *Grose*, 42 Cal. 169; 1 Hilliard on
Mortgages, 23.) The existence of indebtedness is proved,
and proves the transaction a mortgage. (Civ. Code, secs.
2924, 2925, 2950; *Low* v. *Henry*, 9 Cal. 538; *Hickox* v.
*Low*, 10 Cal. 197; *Lodge* v. *Turman*, 24 Cal. 385; *Page* v.
*Vilhac*, 42 Cal. 75; *Farmer* v. *Grose*, 42 Cal. 169; *Jones* v.
*Gardner*, 57 Cal. 641; *Sears* v. *Dixon*, 33 Cal. 333.) Barn-
hart bought the crop, which he would not have done if
the property was his. (*Corcoran* v. *Doll*, 35 Cal. 476;
*Dascey* v. *Harris*, 65 Cal. 357; *Huerstal* v. *Muir*, 62 Cal.
479.) The settlement with Barnhart was a waiver of the
avoiding clause, and estops the company from setting it
up. (May on Insurance, secs. 501, 505; *Fishbeck* v. *Phe-
nix Ins. Co.*, 54 Cal. 422; *Washington Fire Ins. Co.* v.
*Kelly*, 32 Md. 421; 3 Am. Rep. 149; *Clay Fire etc. Co.* v.
*Beck*, 43 Md. 358; *Ring* v. *Windsor etc. Co.*, 54 Vt. 434.)

FOOTE, C.—The plaintiffs were the owners of a cer-
tain tract of land in San Joaquin County. They had
mortgaged the property to persons not parties to this
action, the mortgage had been foreclosed, and the land
sold, and the time for redemption was about to expire.
In this emergency they applied to H. Barnhart to help
them out of their difficulty by advancing the money
necessary to satisfy the purchasers under the sale.

This Barnhart did, and an instrument which is a deed
absolute in form was executed to him by the plaintiffs,
and simultaneously an agreement in writing was entered
into by the parties. Both the deed and agreement were
duly recorded.

The agreement recited that for a certain sum of money,

if paid in a certain time, Barnhart would sell the lands to plaintiffs, and they agreed thus to purchase them, and to pay the amount named in the agreement.

The following is a clause of that instrument (the words italicized being so marked by the writer of this opinion): "Time is hereby especially made the essence of this contract, and in the event of the failure to comply with the terms hereof by said parties of the second part, the said parties of the first part shall be released from all obligations in law or equity to convey said property, *and shall be entitled to the immediate possession of the same, said parties of the second part shall forfeit all rights thereto, and said parties of the first part shall be entitled to a strict foreclosure of this contract;* and the said parties of the first part, on receiving such payment at the time and in the manner above mentioned, agree to execute and to deliver to the said parties of the second part, or to their assigns, a good and sufficient deed." It was not provided that in any contingency the plaintiffs were to be released from their obligation to pay. And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties," etc.

At the same time Barnhart obtained from the defendant corporation two policies of insurance, one for two thousand five hundred dollars on the house upon said land, and another for one thousand dollars upon the barn thereon. These policies were issued to Barnhart as the owner of the property, and not as mortgagee. The sum of money mentioned in the agreement above referred to was made up of the amount paid by Barnhart upon the redemption of the land from the foreclosure sale, the expenses of preparing the deed, agreement, and other papers, the premiums on the policies of insurance, and five hundred dollars in addition, which last sum we surmise to have been as compensation to Barnhart for laying out of the use of his money for the time

specified in the agreement, at the expiration of which the plaintiffs were to purchase back their land.

There was also executed upon the same day with the other instruments heretofore mentioned a bill of sale of the crop growing upon the land of the plaintiffs. After all these agreements were made, the plaintiffs still continued to remain, reside upon, and apparently control, the premises, Barnhart in the mean while receiving money from the proceeds of the crop. On the 18th of September, and before the maturity of the agreement, the house on the premises was destroyed by fire, and shortly afterward the barn.

The adjuster for the defendant corporation appeared on the scene, visited the premises, saw the plaintiffs in possession, and objected to paying the insurance money.

Then it appears that by an arrangement between him and Barnhart, Barnhart received from the insurance company all the money which he claimed the plaintiffs had agreed in their contract to pay him, less what he had admitted he had already received from them, transferred all his interest under the contract to the corporation, and made it a deed to the property. After this suit was commenced they made a conveyance of it to the intervenor.

The plaintiffs before suit brought and before the time stated in the agreement, when their right to purchase the land would expire, tendered to the defendant corporation the money which the plaintiffs claimed to be due under the terms of their contract with Barnhart, and demanded a deed. Defendant offered to receive the money as so much on account, but refused to execute a deed.

The money thus tendered was then deposited in a bank, and was thereafter so kept, ready to be paid the defendant on demand.

On December 17, 1886, a few days after the tender and refusal, plaintiffs filed their complaint herein, al-

leging that the deed from them to Barnhart was intended to be and was a mortgage, and prayed for a reconveyance of the land by the defendant to them, upon the payment of $1,000.20, which they had tendered.

Upon leave being given to intervenor to file his complaint of intervention, plaintiffs answered that pleading and filed a cross-complaint. To the cross-complaint the intervenor demurred, the demurrer was overruled, and the intervenor answered the cross-complaint.

A trial by jury was had upon certain specific issues. The court below afterward adopted the findings of the jury upon them, and filed other findings, which sustained the contention of the plaintiffs, that the deed which they had executed to Barnhart was a mortgage, and adjudged that the intervenor should execute and deliver to the plaintiffs a deed to the premises, upon the payment to him of the amount of their tender and deposit in bank.

A motion for a new trial was made by the defendant and intervenor, and refused; from the judgment and order this appeal is taken.

We perceive no error in impaneling the jury before framing the special issues to be submitted to them; the issues could not be tried by a jury until it was impaneled. Nor can we perceive any error in the finding that the deed to Barnhart was executed to secure a debt due from the plaintiffs to him. Looking at the deed and the contract in the nature of a defeasance, irrespective of the oral testimony in the record, it is apparent from the clause which we have italicized that it was intended that the deed should be a mortgage, securing the payment of a debt. It appears therefrom that there was a sum of money to be paid, and the grantee in the supposed deed was not to be entitled to the possession of the property *until there was a failure to pay said sum*. This is inconsistent with the theory of an absolute deed. Moreover, this provision is supplemented with language about the

"foreclosure" of the plaintiff's rights. This seems to us sufficiently to indicate the nature of the transaction, and to put subsequent purchasers upon inquiry. This being so, and both instruments having been duly placed upon record, the defendant and the whole world were charged with notice of these facts. Therefore the transaction must be held to be a mortgage upon the face of the papers themselves, and inasmuch as the papers were recorded, the insurance company is conclusively presumed to have had notice of the real nature of the transaction. The parol evidence upon the question of mortgage or no mortgage, although unnecessary in the view just stated, was nevertheless admissible, and taken in connection with the papers, leaves no doubt in our minds upon the question.

The appellant makes a strenuous and forcible argument that the evidence, as to the matter of the settlement by Barnhart with the insurance company's adjuster, shows without any conflict that there was no *payment* of the losses under the policies of insurance. It is claimed that Barnhart and the agent both positively swear that the policies were canceled by the payment of one dollar each, and that no settlement was made for the losses occasioned by the fire.

Let it be admitted that the only oral testimony upon the subject, that of Barnhart and the adjuster, is to that effect, and yet the circumstances surrounding the whole matter leave a most decided impression that these two witnesses are mistaken as to their recollection of the facts of the actual transaction. As was said by Baldwin, J., in *Blankman* v. *Vallejo*, 15 Cal. 646: "We do not understand that the credulity of a court must necessarily correspond with the vigor and positiveness with which a witness swears. A court may reject the most positive testimony, though the witness be not discredited by direct testimony impeaching him or contradicting his statements. The inherent improbability of a statement may

deny to it all claims of belief." The court below was in possession of all the peculiar facts surrounding this affair, saw the witnesses and heard them testify, and we cannot say that its determination as to the real truth of the matter was unwarranted. We concur with appellant in its reply brief: "It is entirely true, as respondents contend, that an actual payment of the policies by defendant, at least with notice of the facts concerning the ownership, would have estopped defendant from relying on the clause avoiding the policies in case of untrue representation on that point." And we think that the defendant did pay the policies with notice of the ownership, and is now estopped to claim the benefit of the forfeiture clause. If it voluntarily paid the loss, it makes no difference whether Barnhart was the owner, or only, as the court and jury found here, a mortgagee.

It was agreed by an oral agreement that any insurance money which should be received by Barnhart should be credited against the amount due him. Therefore when such money was received it operated as a payment of the indebtedness *pro tanto*. The insurance company knew of this payment to Barnhart, for it made the payment itself. And inasmuch as it had notice that the transaction was a mortgage, it was put upon inquiry as to whether the mortgage was paid or not.

As said heretofore by the appellate court, this action to redeem is, in effect, merely an action to remove a cloud from the title, and the failure, if there was a failure, to tender enough money to pay the debt in time did not divest the mortgagors of title to the land, and being in possession of the land, they could bring the action to redeem at any time. (*Raynor* v. *Drew*, 72 Cal. 311.)

Of course the plaintiffs cannot have their title quieted unless they have paid, or shall pay, all the money which they owe by their agreement.

The tender of the sum of money offered was refused,

as not being sufficient in amount, as it is stated that the defendant would only receive it on account. This, we think, was a sufficient specification of the reasons why the tender was not considered sufficient under section 2076 of the Code of Civil Procedure, and section 1501 of the Civil Code.

But we do not agree with the court below as to the amount due from the plaintiffs. We have endeavored, without success, to ascertain definitely upon what arithmetical calculation, based upon the evidence in the record, the finding can be supported in relation to the exact sum of money which was paid to Barnhart on account of the proceeds of the crop of grain and hay. The amount in the finding is different from that claimed in the complaint. All the money which Barnhart actually received was $350.81. What went with some of the hay or the money it brought, if sold, does not appear satisfactorily, and it is uncertain what its value was.

We think upon the whole case that the transaction between the plaintiffs and Barnhart was a mortgage, and that the recording of the writings gave the insurance company sufficient notice thereof; that the title remains in the plaintiffs, but that they are entitled to relief in the nature of the removal of a cloud upon condition of payment of what was due; that upon the question of what was due, they are entitled to be credited with the sum of three thousand five hundred dollars, received from the insurance company by Barnhart, and with whatever sums were realized from the crops, and be charged with whatever sums they owe on account of taxes paid for them, and the sums due under the contract with Barnhart.

And we advise that the judgment be reversed, and the cause remanded for a new trial, in accordance with the principles of the opinion.

Hayne, C., and Belcher, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial, in accordance with the principles of the opinion.

Rehearing denied.