[Civ. No. 210. Fourth Appellate District.—June 27, 1930.]

KLEIBER MOTOR TRUCK COMPANY (a Corporation) et al., Appellants, v. INTERNATIONAL INDEMNITY COMPANY (a Corporation), Respondent.

Jesse George, Peter tum Suden and Richard tum Suden for Appellants.

Heskett, Weinberger & Miller, Frank H. Heskitt and Eugene W. Miller for Respondent.

BARNARD, J.—This is an action to recover on an insurance policy. The Kleiber Motor Truck Company on December 8, 1923, by a written contract agreed to sell a truck to one M. Haydis for $4,573.20, payable in installments, with the title reserved in the vendor. This contract provided that the vendee should keep the truck insured against fire in the vendor's name in a sum not less than $4,000, and that all policies should be retained by the vendor. The truck was especially built for this vendee and was delivered on December 22, 1923, complete, except that it had no body. The vendee at his own cost installed a body. About May 1, 1924, the original motor in said truck was replaced with a new one, for which the vendee paid. Soon after said change in motors and on May 6, 1924, the said Haydis entered into another written contract with the plaintiff Alva P. Sumrall, whereby Haydis agreed to sell the truck to Sumrall for $6,000, of which $3,000 was paid down and the balance to be paid in monthly installments. Sumrall took possession, and continued such possession until the truck was damaged by fire, as hereinafter mentioned. Until after the truck was destroyed by fire Sumrall had no knowledge that the Kleiber Motor Truck Company had or claimed any right or interest in the truck, nor did he know of the contract between that company and Haydis. Under his contract Sumrall had agreed to keep the truck insured for the benefit of Haydis, the policy to be retained by the seller. This contract also provided that it should inure to the benefit of and be binding upon the successors of the parties thereto, and the assigns of the vendor. On the sixth day of May, 1924, Haydis assigned, transferred and delivered to the Kleiber Motor Truck Company all of his interest in said truck and in the contract between himself and Sumrall.

The truck was registered with the division of motor vehicles under date of December 22, 1923, the registration certificate setting forth the said Haydis as registered owner, the Kleiber Motor Truck Company, as legal owner,

and describing the truck as "year model 1924." On May 5, 1924, after the new motor had been installed, the truck was again registered, the certificate showing Kleiber Motor Truck Company as legal owner and Haydis as registered owner, but lines were drawn through the name of Haydis and the word "corrected" typewritten in but no name substituted. This was the last registration of the truck prior to its damage by fire. However, on September 10, 1924, after the fire, a new certificate was issued, designated as corrected, wherein the Kleiber Motor Truck Company was designated as legal owner and Sumrall as registered owner.

On August 26, 1924, Sumrall applied to an agent of defendant at San Diego who was authorized to issue policies and collect premiums for a policy of insurance upon the motor-truck involved in this action. The truck was standing in front of the office at the time. The agent asked Sumrall to go out to the truck and get the engine number and the year model. Sumrall took these from the registration slip on the truck and gave them to the agent, and told him that he had bought the truck from Haydis, who was in the office at the time, referring him to Haydis for full particulars. Sumrall testified that he signed a blank application to be filled in by the agent, and left the office. Haydis told the agent that Sumrall still owed $3,500 on the truck, and that he had only paid $2,500 down, although at that time Sumrall had paid $3,600. On or about that date the agent of defendant countersigned and issued the policy of insurance sued on herein, and caused said policy to be mailed to the Kleiber Motor Truck Company, it being received by them on August 30, 1924, the day after the truck had been burned.

The court found upon sufficient evidence that the statements and warranties set forth in the policy, except for the statement as to the year model, were furnished to the agent by Haydis, and that at no time before the fire did either of the plaintiffs know what had been inserted as statements or warranties in the insurance policy. The court also found that neither of the plaintiffs knew, prior to the fire, that the policy had been issued or mailed. The policy in question covered loss or damage to the truck by fire, and contained the following provision:

"It is understood and agreed that Kleiber Motor Truck Company has an interest in the automobile insured hereunder.

"Therefore, loss, if any hereunder, payable to Kleiber Motor Truck Company and/or Alva P. Sumrall as their respective interests may appear.

"Anything in the policy to the contrary notwithstanding."

The court also found upon sufficient evidence that neither of the plaintiffs knew until after the fire that said clause had been attached to the policy. The policy also contained the following:

"Schedule of Statements

"The following are statements of facts known to and warranted by the Assured to be true, and this Policy is issued by the Company relying upon the truth thereof":

Under this schedule of statements, three matters are set forth which are of concern here. First, the truck is described as a "year model 1924"; second, it is described as purchased by the assured in August, 1924, second-hand, at a cost to the assured of $6,000, and under the heading that it is "not mortgaged or otherwise encumbered excepting as follows" appears the following: "Purchased under conditional sale contract from Kleiber Motor Truck Company, balance due $3,500.00"; and third, it contains the following: "No automobile insurance has been declined or cancelled by any company during the past three years, except as follows: No exceptions."

On August 29, 1924, at 2:30 A. M., through no fault of either of the plaintiffs, said truck was almost completely destroyed by fire, the salvage being about $250, and the court found upon sufficient evidence that it was at that time worth largely in excess of the whole amount for which it was insured, plus the salvage upon it, and that the damage to the truck exceeded $4,500. At the date of the fire there was due to the Kleiber Motor Truck Company as vendor under the Haydis contract the sum of $2,897.67, and on the same day there was due from Sumrall as vendee under his contract with Haydis, which had been assigned to the Kleiber Motor Truck Company, the sum of $2,400. The evidence shows without contradiction that the truck had

been previously insured in another insurance company; that when Sumrall purchased the truck on contract he paid Haydis $130 to cover insurance on the truck; that shortly before August 26, 1924, Sumrall received a letter from this other insurance company notifying him that the insurance was canceled for nonpayment of the premium; that on August 26, 1924, he went to Haydis' office to find out why it was not insured; and that in this conversation Haydis introduced him to the agent of the defendant as one who would take his application for insurance, and it was there agreed between all three that Haydis was to pay the first installment of $45 of the premium on the policy here involved. The next morning after the fire, Sumrall made a preliminary report of the fire to the agent of the company and on September 24, 1924, made a formal proof of loss, with an amended proof of loss on October 23, 1924, in all of which the Kleiber Motor Truck Company's interest under conditional sales contract was set forth. After the first proof of loss and on September 16, 1924, the agent of the defendant who had issued the policy wrote to Sumrall as follows:

"Repairs on your truck, damaged in your recent fire loss, are now well under way, but it will be impossible to complete this adjustment unless the premium on this policy in the amount of $140.95 is paid to this office.

"This is holding up the settlement of this claim, and we would therefore thank you to let your check in the above amount come forward by early mail, thereby obliging."

And enclosed a bill for $140.95. A few days later the amount of the premium was paid to this agent of the defendant, who accepted it, and subsequently, on October 3, 1924, the defendant addressed a letter to Sumrall in which it denied liability on the insurance policy in question, and stated that its records did not show it had received the premium and that the company did not claim any premium as due.

In connection with the three statements set forth in the policy above referred to, the court found that all three were untrue, that the truck was in fact a 1923 model, that it was purchased from M. Haydis under a conditional sales contract and not from the Kleiber Motor Truck Company, that

the date of the contract was May 26, 1924, and not August, 1924, and that within four months previous to the date of the policy another insurance company had issued a policy on said truck and the same had been canceled, prior to the issuance of this policy, for the nonpayment of the premium. The court did not find that either of these statements was as to a material matter or that they were knowingly or intentionally misrepresented. On the other hand the court found, with the exception that the information as to the year model was furnished by Sumrall, that none of these statements were made by either of the plaintiffs and that neither of the plaintiffs knew that any one of these statements was inserted in the policy. In a written opinion the court held that all of these statements were as to immaterial matters, but the decision of the court was based upon the holding that Sumrall, when he applied for the policy, had no knowledge of the interest of the Kleiber Motor Truck Company; that he did not intend to cover any such interest by insurance; that there was no mutuality of contract as between the plaintiff Kleiber Motor Truck Company and either the defendant International Indemnity Company or the plaintiff Sumrall; and that there was no mutual agreement or meeting of the minds of the parties as to the insurance of the interest of the Kleiber Motor Truck Company in said truck. A judgment was entered in favor of the plaintiff Sumrall for $1875 and denying all relief to the Kleiber Motor Truck Company. From said judgment both of said plaintiffs have appealed.

The first question presented is as to whether or not the contract of insurance, as made, covered the interest of the plaintiff Kleiber Motor Truck Company. The judgment of the court was based upon its findings that Sumrall had not agreed with the defendant either for himself or for the Kleiber Motor Truck Company that any part of the loss under said policy should be payable to the Kleiber Motor Truck Company, and that the defendants had not agreed with either of said plaintiffs after the fire that any portion of the loss should be payable to the Kleiber Motor Truck Company.

It seems to be well settled in California that a party to whom a loss is made payable under the terms of an insurance policy, if he has a substantial interest in the

property destroyed, may bring suit on said policy as the real party in interest. (*West Coast Lumber Co.* v. *State Inv. & Ins. Co.*, 98 Cal. 502 [33 Pac. 258]; *Blasingame* v. *Home Ins. Co.*, 75 Cal. 633 [17 Pac. 925]; *Reynolds* v. *London etc. Ins. Co.*, 128 Cal. 16 [79 Am. St. Rep. 17, 60 Pac. 467]; *Loring* v. *Duchess Ins. Co.*, 1 Cal. App. 186 [81 Pac. 1025].) ■ Nor does it make any difference that the Kleiber Motor Truck Company did not know that this particular policy was being taken out at the time it was applied for. It had a contract with Haydis whereby he agreed to keep the truck insured in its favor, and Haydis' contract with Sumrall containing a provision that the interests of the vendor should be covered by insurance had been assigned to the truck company. That company unquestionably had an insurable interest in the truck. The insurance policy in question expressly covered this interest and provided that loss, if any, should be paid to them as their interest appeared.

In the case of *Hooper* v. *Robinson*, 98 U. S. 528 [25 L. Ed. 219], the Supreme Court of the United States says:

"One may become a party to an insurance effected in terms applicable to his interest, without previous authority from him, by adopting it either before or after the loss has taken place, though the loss may have happened before the insurance was made."

"The adoption of the policy need not be in any particular form. Anything which clearly evinces such purpose is sufficient."

In *Phoenix Ins. Co.* v. *Hancock*, 123 Cal. 222 [55 Pac. 905, 906], the court says:

"Although defendant had no authority to procure insurance for the administratrix, yet she could have ratified his act—even after the occurrence of a loss." (*Hooper* v. *Robinson*, 98 U. S. 528 [25 L. Ed. 219].)

■ Even if it be held that no particular authority to take out this definite insurance is here shown, still, under the authorities it was made valid by the ratification of the Kleiber Motor Truck Company, subsequent to the loss. (*Ferrar* v. *Western Assur. Co.*, 30 Cal. App. 489 [159 Pac. 609, 611].) In the case of *Union Inst. for Savings* v. *Phoe-*

*nix Ins. Co.*, 196 Mass. 230 [13 Ann. Cas. 433, 14 L. R. A. (N. S.) 459, 81 N. E. 994], the court said:

"The first question is whether the plaintiff can avail itself of the contract thus made for its benefit. We think it plain that this question should be answered in the affirmative. Surbridge acted in part for himself and in part as an agent and representative of the plaintiff in procuring the policy. He must be held to have acted in the same double capacity in receiving and holding it. This policy contained a contract between the defendant and Surbridge, and a somewhat different contract between the defendant and the plaintiff. Both the mortgagor and the mortgagee were protected in their rights under their several contracts contained in a single paper signed by the defendant. *Palmer Sav. Bank* v. *Insurance Co. of N. A.*, 166 Mass. 194 [55 Am. St. Rep. 387, 32 L. R. A. 615, 44 N. E. 211]; *Hastings* v. *Westchester F. Ins. Co.*, 73 N. Y. 141; *Hartford F. Ins. Co.* v. *Olcott*, 97 Ill. 439–456. Surbridge's action in procuring the policy was in pursuance of the covenant in the mortgage, and was founded in part upon the consideration stated in the mortgage. It was immaterial which of the parties protected by the policy retained possession of the paper. It is also immaterial that the plaintiff, at the time of the fire, had not been informed of the action taken by the mortgagor for its benefit, under its authority."

We think the finding of the court that Sumrall at no time prior to the fire intended that such policy should cover any interest of the Kleiber Motor Truck Company in said truck is not supported by the evidence. Sumrall took out insurance for more than his own interest in the truck. He intended this excess to cover something. When he discovered that the truck was without insurance he went to the vendor, who introduced him to the agent of the defendant. He told the agent he desired insurance to the amount of $4,500 on the truck, that he was buying it on contract, referred the agent to Haydis for further information, was told that it would be covered, and left. Sumrall testified:

"Q. And if you had known it you would not have warranted in that policy that it was bought from the Kleiber Motor Truck Company when you didn't know it, would you? A. I would have found out. . . .

"Q. Well, would you, if you didn't have any knowledge that the Kleiber Motor Truck had any interest in it? A. If it had to be in there to get insurance on the truck I'd allow him to do it, no matter who I bought it from, or anything else, if it had to be covered by insurance, that was my view of the thing.

"Q. If as a matter of fact—you would then permit Mr. Aveldson to put anybody's name that he wanted to as to ownership? A. It had to be insured, if he said it was legally done—

"Q. Yes.

"By the Court: Q. You would let him write anything at all in there that he wanted to write, as long as he stated it was legal?

"A. Yes, sir, he was writing the policy, not me." . . .

"Q. Did he ask you any other questions? A. He asked me what was due on the truck, I referred him to Mr. Haydis."

There can be no doubt he intended to insure both his own interest and that of his vendor. He referred the agent to Haydis, and based on information given him by Haydis, the agent stated in the policy that it was being bought from the Kleiber Motor Truck Company and inserted a clause making loss, if any, payable to that company and to Sumrall, as their respective interests should appear. At that time Sumrall's contract provided that the vendor's interest should be covered and that all of the provisions of the contract should inure to the benefit of anyone to whom Haydis might assign the contract. And the contract had then been assigned to the Kleiber Motor Truck Company. At that time the Kleiber Motor Truck Company was the owner of both contracts and while Haydis may not have been relieved of his liability under his original contract, he had no real interest in the truck as Sumrall owed $2,400, while he owed over $2,800. Haydis having assigned all his interest in the Sumrall contract to the truck company and having no equity from the purchase price of the truck coming to him, the agent of the defendant was not very far from the actual facts in inserting the statement in the policy that the truck was being purchased by Sumrall from the Kleiber Motor Truck Company. The agent having so expressed the situation without the knowledge of Sumrall,

as found by the court, we cannot feel that the technical difference between setting out the actual facts in relation to the two contracts of purchase as they existed, and setting out that the truck ·was being purchased on contract from the Kleiber Motor Truck Company, is either sufficiently erroneous or of sufficient materiality to make this policy of insurance void. We feel that the real intention of Sumrall was to comply with the terms of his contract and insure the interest of his vendor as well as himself, rather than to insure the interest of Haydis, personally. He was bound by his contract to protect the interest of the assignee of Haydis and he gave general directions to the agent as to where information could be obtained, and trusted him to issue the insurance in proper form. The insurance as issued specifically provided that the loss, if any, should be payable to the Kleiber Motor Truck Company and to Sumrall, as their respective interests appeared, and we think there was sufficient meeting of the minds of the parties to this contract of insurance, under the established rules of law, to protect the interests of both plaintiffs. We therefore think if there is any insurance at all, it is payable to the Kleiber Motor Truck Company to the extent of their interest, and then to the plaintiff Sumrall. It has been held that an oral contract for insurance to take effect immediately binds the company, although the policy is not issued until later. (*Harron* v. *City of London F. Ins. Co.,* 88 Cal. 16 [25 Pac. 982]; *Gold* v. *Sun Ins. Co.,* 73 Cal. 216 [14 Pac. 786].) The general circumstances of this case appeal more strongly to a court of justice than do the circumstances of the cases just cited.

A further consideration is that after the fire had occurred and after proof of loss had been furnished to the agent of the defendant, which proof of loss sets forth that the Kleiber Motor Truck Company and Sumrall each had an interest in the property, and that no other person had any interest therein, the defendant, through its agent, demanded and accepted the payment of the premium. While the defendant may not be estopped from setting up breaches of warranty, if any, it must be held to have waived this particular representation of ownership of which it then had full knowledge. (*Curtiss* v. *Aetna Life Ins. Co.,* 90

Cal. 245 [25 Am. St. Rep. 114, 27 Pac. 211]; *Baker* v. *Fireman's Fund Ins. Co.*, 79 Cal. 34 [21 Pac. 357].)

Still another consideration is that the answer did not raise the issue that there had been no meeting of the minds of the parties, and this defense did not appear in any part of the trial until it appeared in the opinion of the trial judge. The defendant admitted the execution of the policy in its answer and sought to defend upon the ground of misstatements in the application and breach of warranties. Not having been alleged in the pleadings and not having been raised at the trial of the case, this defense should not now be available to the defendant. (24 Cal. Jur., at p. 977, and cases there cited.)

We are therefore of the opinion that the conclusion of the trial court upon this branch of the case was erroneous, and that under the circumstances shown by the evidence and found by the court, there was a mutually binding agreement and policy of insurance as to the plaintiff Kleiber Motor Truck Company, as well as to the plaintiff Sumrall, and that the insurance on the truck in question inured first to the benefit of the Kleiber Motor Truck Company, and then to Sumrall.

We then come to the question as to whether the contract of insurance was rendered void by misrepresentations or by breach of warranties. The policy in question provided as follows:

"This entire policy shall be void if the assured has concealed or misrepresented any *material* fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

No question is raised of the good faith of either of the plaintiffs. Under the terms of the policy, however, if any misrepresentations were of material facts the plaintiffs may be bound by them. (*Porter* v. *General Acc. Assur. Corp.*, 30 Cal. App. 198 [157 Pac. 825].)

"Materiality is to be determined, not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (Civ. Code, sec. 2565.)

Aside from the statement as to the ownership and parties interested in the truck, which we have already covered, the only false statements claimed and relied upon by the defendant are three, which we will take up in order.

First, it is claimed that this truck was in fact a 1923 model, and that the statement in the policy that it was a 1924 model is false. The court found that this statement was untrue but we think this finding is not supported by the evidence. The assistant manager of the defendant testified as follows: "An automobile may be turned out in December and be 1927, be called 1927, and in January, that car is a year old with us for insurance purposes, it is still a 1927 car."

He also testified that the insurance value of a truck would vary in an amount he could not say, when it was a year older. This is a plain statement that there would be a variance between the insurable value of a car built in December of one year from that of another car built in January of the next year. No evidence appears, however, that any such question was ever asked of the plaintiff Sumrall, or of anyone else, in issuing this insurance, and the statements set forth in the policy contain no reference to what year or month the car was built, but refer only to the year model. Not only is it a well-known fact that many manufacturers of automobiles put out, for instance, what is known as a 1930 model which is built and actually sold in the later months of 1929, but the evidence in this case shows that the manager of the Kleiber Motor Company testified that he registered this particular truck with the state motor vehicle department as a 1924 model, and that his company regularly registered machines built in December 1923, as 1924 models. Also, a representative of the state motor vehicle department testified it was the usual practice in December, 1923, for manufacturers of cars built in December, 1923, to register them as 1924 models, and that the department at that time registered them as designated by the manufacturer. The transcript contains 635 pages and we have been unable to find in it anything to contradict this testimony, or to contradict the fact that this truck was actually a 1924 model. While there was evidence that the truck was built in December, 1923, as we

have seen, nothing contained in the policy went to that point. The only other evidence having any bearing on that question is that the number of the motor originally placed in the truck is embraced in numbers on motors put out in 1923, but this truck was especially built for the buyer and if it be assumed that such a numbered motor might affect whether or not the car as a whole was a 1924 model, the evidence shows that the motor was taken out before this insurance was issued, and a new motor installed which was of a number not embraced in those put out in 1923. We do not regard this of great importance as the only evidence in the case shows that the year model was determined by the designation given by the manufacturer and not by the precise date when it was built. That the policy could have been so written as to cover a representation as to the time it was built, rather than the year model it might be called, is, of course, true, but this was not done in the instant case. The circumstances of this case are very different from an actual misrepresentation of the age of a car, such as was present in the case of *Solomon* v. *Federal Ins. Co.*, 176 Cal. 134 [167 Pac. 859]. Not only is this finding not sustained by the evidence, but under the wording of this policy, and under the rule laid down in *National Bank* v. *Union Ins. Co.*, 88 Cal. 497 [22 Am. St. Rep. 324, 26 Pac. 509], we do not think this statement would have been material had it been untrue, under the circumstances here shown. Under the rule laid down in section 2565 of the Civil Code, and under the statement of the defendant's manager that they regarded as important the year in which the machine was built, the statement in the policy that it was a 1924 model cannot be deemed of materiality when no information was sought or given as to the year or month in which the car was built. It may also be remembered that when the insurance was applied for, the car stood in front of the agent's office, that Sumrall had no knowledge or information on the subject, and that he merely, at the agent's request, went out and brought in the engine number and the year model from the registration slip in the car. We are unable to find anything in the evidence to support the finding that the statement was untrue, but on the other hand, we agree with the conclusion of the trial court that even if the state-

ment was untrue, it was immaterial, and under the wording of the policy would not void the insurance.

■ The second misrepresentation complained of was the statement that the truck was purchased from the Kleiber Motor Truck Company instead of from M. Haydis, and that the date of said contract of purchase was not August, 1924, but May 6, 1924. We have already treated the first part of this statement and we are of the opinion that the misstatement as to the date of purchase is not material. The mistake was apparently made by the agent who made the policy, it was never actually brought to the attention of either of the plaintiffs, and the difference in date of purchase could have had no possible effect on the insurance applied for.

■ The third misstatement was that no insurance had previously been canceled within three years. The evidence shows that a previous policy had been canceled within four months for the nonpayment of the premium. In *Victoria S. S. Co.* v. *Western Assur. Co.*, 167 Cal. 348 [139 Pac. 807], the court says:

"Under these provisions no right to avoid or rescind a subsisting policy occurs from the violation of any provision thereof, whether technically a warranty or not, unless such provision is material, except in cases where the policy itself declares that such breach shall void it."

The policy here in question particularly provides that the sort of misrepresentations which shall void it is a representation of a material fact, and the plain meaning is that this shall be a material fact which affects the insurance applied for. The plaintiff Sumrall testified that when he was notified that some preceding insurance had been canceled, he thought it meant the insurance had expired, and having thought he had paid for a full year's insurance, he went to the vendor and asked for an explanation. The evidence further shows that this entire conversation took place in the presence of the defendant's agent, and anything material was thus known to the defendant when the policy was issued. It does not appear that Sumrall knew that the previous insurance had been canceled, as distinguished from an expiration, and the statement in the policy was not brought to the attention of either plaintiff, until after the fire. The cancellation in question was not because

of any defect in the truck or anything that affected its insurability, and any delinquency in failure to meet the premiums was not that of the plaintiffs or either of them, but of someone else. We cannot see how this could possibly have affected the desirability of this risk, and whether the misstatement in the policy was due to a mistake on the part of the agent or to misinformation given him by Haydis, it was not made by either of the plaintiffs, was entirely immaterial and any facts that were binding upon the plaintiffs were known to the agent of the defendant when the insurance was applied for. Where the cancellation is for a reason not affecting the nature of the risk it is not material. (*Hawley* v. *Liverpool L. & G. Ins. Co.*, 102 Cal. 651 [36 Pac. 926].)

We are of the opinion, therefore, that under the circumstances disclosed by the evidence in this case, the misstatements appearing in the policy and relied on by the defendant, cannot be held sufficient to avoid liability on the policy.

One other matter remains to be considered. Even if the trial court was correct in its conclusion that the plaintiff Kleiber Motor Truck Company could not recover in this action, we do not agree with the reasoning of the court in fixing the amount of plaintiff Sumrall's recovery. The judgment for $1875 was based upon the proposition that since the insurance company was told that Sumrall's interest in the truck amounted to $2,500, he should recover such proportion of the $4,500 insurance as $2,500 bears to $6,000 (the value of the truck), which is five-twelfths, or $1875. If there was a meeting of the minds of the parties as to insuring the interest of Sumrall only, the interest of Sumrall at the time of the fire was covered. It is conceded that this was $3,600. It is conceded that the truck was worth $6,000 and that it was insurable for $4,500. Under the terms of the policy he was insured "as his interest may appear," and this refers to the time of the fire. In any view of the case the amount of the judgment is not correct.

For the reasons stated the judgment is reversed, with directions to the trial court to enter a judgment in favor of both plaintiffs, in accordance with their respective interests as shown by the evidence on the preceding trial,

to wit: $2,897.67 in favor of the Kleiber Motor Truck Company, and the balance of the $4,500 in favor of Sumrall.

Marks, Acting P. J., and Ames, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 19, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 25, 1930.